RALPH S. BARTLETT, ERWIN J. BARTLETT, HOMER F. SCHOOLING and BARTLETT BROTHERS LAND & LOAN COMPANY v. JOE·MCCALLISTER ET AL; MILAN STATE BANK and FRANK C. MILLSPAUGH, Commissioner of Finance, Appellants.

Division Two, December 20, 1926.

1. **INSOLVENT BANK: Pending Suit: Filing: Waiver.** The Commissioner of Finance can waive his right to have dismissed a suit pending against a bank at the time he takes charge of it, and he does waive the right by entering into a written stipulation, within four months thereof, waiving the dismissal or abatement which he may claim under the statute and agreeing not to raise the question of jurisdiction of the court to proceed to the trial of the suit. The statute requiring claimants to present their claims to the Commissioner of Finance within four months after notice that he has taken charge of the bank is for his convenience, and where the claimants, but for such waiver, could have dismissed their pending suit and filed their claim with him within the four months, and, upon his failure to approve it, could have timely filed another suit upon the same cause of action, it would be unjust to permit him to take advantage of their reliance upon his waiver.

2. ———: **Trust Fund.** A check entrusted by a lender to a transferee for a particular and specified purpose, namely, to pay a note and satisfy a deed of trust on land securing it, is a trust fund in the hands of the transferee, whose duty it becomes to use its proceeds as he was directed by the sender, and when he permitted it to be deposited in a bank to the credit of others and to be used, not to pay the note, but for purposes other than those for which it was entrusted to him, he violated his trust.

3. ———: **Officer: Alter Ego: Acting in Own Interest: Knowledge: Trust Fund: Worthless Notes.** Knowledge of an officer of a corporation is knowledge of the corporation, although he is dealing with it in his own interest, if he is at the same time its managing officer and acts as its sole representative in the particular transaction. Where a loan company entrusted a check to a transferee, with specific directions to use it to pay a

316 Mo.—9.

certain note and deed of trust on land, and he violated the directions and deposited the check to his own credit as a general account in a bank, of which he was the general manager and its sole representative, his knowledge was the knowledge of the bank, and the bank took the deposit with full knowledge that the fund was the money of the loan company and was not an innocent holder of the trust fund, but knowingly permitted it to be diverted from its trust purposes, and for that reason its assets became impressed with a trust in favor of the loan company. And the situation was not changed when the bank thereafter, with full knowledge of the trust character of the fund, received worthless notes in exchange for it.

4. INSOLVENT BANK: Reorganization: Obligations of New Bank: Void Agreement. An agreement by which a new bank assumed the obligations of an old bank, made at a special meeting which four of the directors of the old bank did not attend and of which they were not notified, was void, and the new bank therefore took the assets of the old bank into possession as it found them, and notice that such assets were impressed with a trust in favor of plaintiffs was not necessary; and when the new bank became insolvent and passed under the control of the Commissioner of Finance, he took no better title to the assets than that possessed by the new bank.

5. ———: Trust Fund: Acceptance of Other Assets: Election of Remedies: Estoppel. The defense that plaintiffs had made an election of remedies must be pleaded. Estoppel in pais, when relied upon as a defense, must always be pleaded. Where plaintiffs sued the Commissioner of Finance and the bank in his hands on the theory that a check deposited by their transferee and trustee in his own bank was a trust fund and the bank's assets are impressed with a trust in their favor, a contention that plaintiffs elected to accept from such transferee certain other assets for the purpose of recouping their losses and therefore are estopped from proceeding against the assets of the bank, must be pleaded, in order to be considered.

Corpus Juris-Cyc. References: Banks and Banking, 7 C. J., Section 134, p. 530, n. 71; Section 153, p. 546, n. 88; Section 487, p. 733, n. 33 New. Corporations, 14a C. J., Section 2358, p. 490, n. 50, 52; p. 491, n. 54. Election of Remedies, 20 C. J., Section 32, p. 37, n. 53, 54. Estoppel, 21 C. J., Section 248, p. 1242, n. 92; Section 257, p. 1246, n. 33. Trusts, 39 Cyc., p. 17, n. 1, 2; p. 186, n. 74; p. 293, n. 3.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.

AFFIRMED.

*T. E. Francis* and *Ernest A. Green* for appellants; *William C. Irwin* of counsel.

(1) This suit cannot be maintained against appellants, because no claim was filed by plaintiffs, or either of them, with the Commissioner of Finance as required by law, and the trial court, therefore, erred in failing and refusing to find for defendants and dismiss plaintiffs' bill. Sec. 11720, R. S. 1919; Laws 1915, p. 123; Koch v. Missouri-Lincoln Trust Co., 181 S. W. 48; Steffens v. Bank, 43 Mo. 385; Wisconsin Trust Co. v. Cousins, 179 N. W. 801. (2) The court erred in finding and rendering judgment for plaintiffs and erred in failing and refusing to enter judgment in favor of appellants, for the fol-

lowing reasons, and each of them: (a) The remittance of $29,355, as made by plaintiff Bartlett Brothers Land & Loan Company to its agents, the defendants Joe and Mark McCallister, constituting the McCallister Loan Company, was not impressed with a trust even as against the old Milan Bank; and the trial court erred in not so holding. 39 Cyc. 71; 7 C. J. 751, sec. 548; 26 R. C. L. 1180; Truby v. Pease, 240 Ill. 513; Butcher v. Butcher, 134 Mo. App. 67; Paul v. Draper, 158 Mo. 199; Benton v. German-American Bank, 122 Mo. 339. (b) The remittance from plaintiff Bartlett Brothers Land & Loan Company to the McCallister Loan Company was placed in the old Milan Bank as a general deposit, and hence did not constitute a trust fund; and the trial court erred in not so holding. Butcher v. Butcher, 134 Mo. App. 67; Paul v. Draper, 158 Mo. 199; Harrison v. Smith, 83 Mo. 210; Stotler v. Coates, 88 Mo. 514; Midland Nat. Bank v. Brightwell, 148 Mo. 358; Minard v. Watts, 186 Fed. 247; School District v. Bank, 102 Mass. 174; Fletcher v. Sharp, 108 Md. 276; Wetherell v. O'Brien, 140 Ill. 146; Mudd v. Bank, 175 Mo. App. 398; Ihl v. Bank, 26 Mo. App. 129; Pennington v. Bank, 77 S. E. 456. (c) The knowledge on the part of the defendant Joe McCallister with reference to such remittance and the purpose for which it was sent, which was received by him other than in his official capacity as cashier of the Milan Bank, was not knowledge that could be imputed to the Milan Bank; and the trial court erred in not so holding. Bank v. Fitze, 76 Mo. App. 363; Benton v. German-American Nat. Bank, 122 Mo. 339; Bank v. Bryan, 72 W. Va. 29; Pueblo Savings Bank v. Richardson, 39 Colo. 319; Hilliard v. Lyons, 180 Fed. 687; 1 Morse on Banks & Banking (5 Ed.) sec. 166, pp. 370, 372; Melton v. Pensacola Bank, 190 Fed. 126; Bank v. Lovitt, 114 Mo. 519; Bank v. Loyhead, 28 Minn. 396; Leonard v. Latimer, 67 Mo. App. 138; Latimer v. Equitable Loan Co., 78 Mo. App. 467. (d) The moneys paid by the plaintiffs Ralph S. Bartlett and Erwin J. Bartlett to the McCallisters and deposited by them generally to the McCallister-Schooling account cannot be held to be a trust fund for the same reasons. The Milan Bank was not chargeable with notice of its special character; and the trial court erred in not so holding. (e) In no event could the Milan State Bank be held as a trustee *ex maleficio*, since it acquired the assets of the Milan Bank in consideration of its assumption of the liabilities of the latter bank, without any notice or knowledge, actual or constructive, that any trust existed in favor of or was claimed by plaintiffs, or any of them. (f) The trial court erred in holding that the assets of the Milan State Bank were impressed with a trust in favor of plaintiffs, to the extent of $16,600 and $2008.12 interest, for the reason that the agreed facts establish that, at the time the Milan State Bank acquired the assets of the Milan Bank, there was on deposit to the

credit of the account in question (the McCallister & Schooling account) only $618.65, the balance of the funds which plaintiffs claim were impressed with a trust having previously been checked out. (g) The plaintiffs, respondents, having elected to accept an assignment from the defendant Joe McCallister of certain assets for the purpose of recouping the same losses for which they now sue, are estopped from proceeding against the assets of the Milan State Bank to recover for the same alleged losses and the trial court erred in failing to so hold. Ottumwa Nat. Bank v. Totten, 94 Mo. App. 596; Dry Goods Co. v. Warden, 151 Mo. 585; Nanson v. Jacob, 93 Mo. 331; Realty Co. v. American Surety Co., 238 S. W. 494.

*Chas. H. Mayer* for respondents.

(1)    Joe McCallister knew that the $29,355 sent by Bartlett Brothers Land & Loan Company to the McCallister Loan Company was sent to the latter company for the specific purpose of paying the encumbrances on the farm and perfecting title in Schooling, so that the Bartlett Brothers Land & Loan Company mortgage would be a first lien, and his knowledge, he being the sole managing officer of the Milan Bank, was the bank's knowledge. Moreover, in accepting the deposit from the McCallister Loan Company and in afterwards changing the account to McCallister & Schooling, he was acting both for himself and for the bank. Leonard v. Latimer, 67 Mo. App. 138; Bank of Amsterdam v. Welliver, 215 Mo. App. 247; Citizens' Trust Co. v. Coppage, 227 S. W. 1059; Farmers & Merchants Bank v. Loyd, 89 Mo. App. 262; Latimer v. Loan Co., 78 Mo. App. 463; Bank of Senath v. Douglass, 178 Mo. App. 664; Tatum v. Bank & Trust Co., 69 So. (Ala.) 508; State v. American State Bank, 187 N. W. (Nebr.) 769; First National Bank v. Blake, 60 Fed. 78; State Bank v. Adams, 17 N. W. (Minn.) 927; Farmers & Merchants Bank v. Kohler, 198 N. W. (Minn.) 415; Mays v. First State Bank, 247 S. W. (Tex.) 845. (2)    The remittance of $29,355 in the hands of McCallister Loan Company was a trust fund; the Milan Bank, with knowledge that it was a trust fund, took it, added it to and mingled it with its other assets, and therefore the general assets of the bank should be charged with the amount wrongfully converted. Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 514; Evangelical Synod v. Schoeneich, 143 Mo. 652; Pundman v. Schoenich, 144 Mo. 149; Leonard v. Latimer, 67 Mo. App. 138. (3)    In taking from the assets of the bank the Hoselton note for $10,600 and the McCallister note for $6,000, and, in lieu thereof, placing in the assets of the bank $16,600 of the funds sent by Bartlett Brothers Land & Loan Company to McCallister Loan Company, Joe McCallister, the cashier, was the sole representative of the bank, acting in a banking

transaction of financial interest to the bank. The bank not only gave no consideration for the $16,600, but, through its cashier, Joe McCallister, acting in this very transaction, the bank knew that the funds were not the funds of the bank. The Milan Bank, its successor in possession, the Milan State Bank, and the latter's receiver, the Commissioner of Finance, with full knowledge of McCallister's fraud, and with full knowledge that no consideration whatever was given by the Milan Bank for this $16,600, still seek to retain the benefit of McCallister's fraudulent act and to hold the $16,600; they must be held to have adopted McCallister's whole act, fraud and all. Atlantic Mills v. Indian Orchard Mills, 147 Mass. 268; Diddy v. Dominion Nat. Bank, 75 Fed. 769; United States v. State Nat. Bank, 24 L. Ed. (U. S.) 647; Pensacola State Bank v. Thornberry, 226 Fed. 620; Hallett v. Fish, 120 Fed. 986; Holden v. New York & Erie Bank, 72 N. Y. 294; State v. Am. State Bank, 187 N. W. (Nebr.) 763; First Nat. Bank v. Dunbar, 9 N. E. (Ill.) 186. (4) It is admitted that Joe McCallister obtained the last payment of $10,209 toward the purchase price of the farm from Ralph S. Bartlett and Erwin J. Bartlett by practicing the rankest fraud. Acting as cashier of the Milan Bank, he deposited this money in the bank, mixed it with other assets of the bank, and thereby swelled the assets of the bank. The Milan Bank was chargeable with knowledge of Joe McCallister's fraud, and thereby became a trustee *ex maleficio*. 3 Pomeroy (4 Ed.) p. 2404, sec. 1053; Moore v. Crawford, 130 U. S. 122, 32 L. Ed. 878. (5) The Milan State Bank is not an ''innocent purchaser'' of the assets of the Milan Bank, and therefore took those assets subject to any existing equity. The transfer of the assets was illegal and utterly void, for the reason that there was no meeting of the directors. 2 Purdy's Beach on Private Corps., p. 976, sec. 665; Conyngton on Corp. Procedure, p. 362, sec. 424; Chouteau Ins. Co. v. Holmes, 68 Mo. 601; Hill v. Rich Hill Mining Co., 119 Mo. 24; Brinkerhoff Zinc Co. v. Boyd, 192 Mo. 613; Calumet Paper Co. v. Haskell Ptg. Co., 144 Mo. 331; State ex rel. v. Rubber Co., 149 Mo. 202. (6) The receiver, the Commissioner of Finance, of course, stands in no better position than the Milan State Bank. Skud v. Tillinghast, 195 Fed. 5; State v. American State Bank, 187 N. W. (Nebr.) 762. (7) Respondents, by accepting an assignment of certain ''assets'' from Joe McCallister, which assets the oral testimony shows were worthless, are not estopped from proceeding against the bank. 20 C. J. 37, sec. 32; Eastin v. Bank of Harrisonville, 246 S. W. 994; Horigan Realty Co. v. First Nat. Bank, 273 S. W. 777; Holland Bank v. Broocks, 266 S. W. 188; Otto v. Young, 227 Mo. 219; Cowan v. Young, 282 Mo. 488.

BLAIR, J.—Suit in equity to have certain assets of the Milan State Bank in the hands of the Commissioner of Finance impressed with a trust in favor of respondents. The case was tried in Livingston County, after change of venue from Sullivan County. The trial court found that the assets of said bank in the hands of said commissioner should be impressed with a trust in favor of Bartlett Brothers Land & Loan Company, to the extent of $16,600 and interest, and allowed same as a claim, superior to the claims of depositors and general creditors, found for defendants in other respects and rendered judgment accordingly. From such judgment said bank and the Commissioner of Finance were granted an appeal.

On and prior to May 12, 1920, the Milan Bank at Milan, in Sullivan County, herein usually referred to as the "old bank," became insolvent and was taken over by the Commissioner of Finance. On May 22, 1920, the Milan State Bank, herein usually referred to as the "new bank," having just been organized for the purpose, took over the assets and assumed the obligations of the old bank. It continued as a banking institution until October 13, 1921, when it in turn failed and its assets were taken over by the Commissioner of Finance. The claim that assets of the new bank were impressed with a trust grew out of transactions prior to the failure of the old bank.

Bartlett Brothers Land & Loan Company of St. Joseph, Missouri, was a corporation engaged in the farm loan business. Joe McCallister and his brother Mark E. McCallister were engaged in the farm loan business under the co-partnership name of McCallister Loan Company, and had previously negotiated loans from Bartlett Brothers Land & Loan Company. In January, 1920, and apparently acting for respondent Homer F. Schooling, McCallister Loan Company negotiated a $30,000 loan from Bartlett Brothers Land & Loan Company on a farm, supposedly owned by Schooling. His title had not yet been perfected. The McCallister Brothers were interested with him in the purchase of said farm. The loan was approved, and Bartlett Brothers Land & Loan Company sent to McCallister Loan Company their check for $29,355, being the proceeds of the $30,000 loan, after deducting interest and commission. The letter enclosing the check contained a statement from the attorney for Bartlett Brothers Land & Loan Company showing an encumbrance of $26,800 against the land. The indebtedness had been reduced to $22,800. The note and deed of trust were executed by one Swearingen, with whom Schooling made his contract of purchase. The note was payable to Reuben Payne and was then owned by Payne's heirs. The letter from Bartlett Brothers Land & Loan Company to McCallister Loan Company informed the latter that "we are depending upon you to see that all prior encumbrances are paid and that the deed to the applicant (Schooling) is filed for record and our trust deed imme-

diately afterward." Instead of applying the proceeds as directed, McCallister Loan Company deposited the check in the old bank to their credit and it was paid to said bank in due course. Joe McCallister, one of the partners in the loan company, was cashier and managing executive officer of the old bank and knew all about the directions given by Bartlett Brothers Land & Loan Company when it sent its check to the McCallisters. Thereafter, $30,000 of the McCallister Loan Company account, which included the proceeds of the Bartlett Brothers Land & Loan Company check, was transferred to the account of McCallister and Schooling by a check drawn by McCallister Loan Company. The account of McCallister and Schooling was afterward checked out and used for purposes of McCallister and Schooling. None of the money was used to pay off the Reuben Payne note, which was afterwards purchased by Bartlett Brothers Land & Loan Company to protect itself.

The two McCallisters and Schooling were directors of the old bank and were the only officers of the bank who had any knowledge of the transactions leading up to the deposit of $29,355 in the bank by McCallister Loan Company and of the directions given McCallister Loan Company when the check was sent to the McCallisters. On May 10, 1920, a check was drawn on the McCallister and Schooling account for $16,600 in payment for two notes then owned and held by the old bank. One note was for $10,600, payable to Joe McCallister, dated April 22, 1920, and due one year after date, bearing six per cent interest from maturity, signed by Gus Hoselton and wife and endorsed by Joe McCallister. Said note was secured by a second or third mortgage on land. The other note was for $6,000, payable to the old bank, signed by Mark E. McCallister and not yet due when purchased. Both of said notes were worthless at the time of the trial and probably at the time the old bank received the $16,600.

It seems that, after the proceeds of the Bartlett Brothers Land & Loan Company check came into the possession of McCallister and Schooling and were misappropriated, Schooling and Mark E. McCallister contracted to sell the land covered by the Reuben Payne deed of trust to Ralph S. Bartlett and Erwin J. Bartlett (Bartletts who were not connected with Bartlett Brothers Land & Loan Company). They secured several thousand dollars from them upon the misrepresentation that the Reuben Payne note had been paid. Said Bartletts joined Bartlett Brothers Land & Loan Company as plaintiffs. Schooling was also named as plaintiff. As none of the plaintiffs, except Bartlett Brothers Land & Loan Company, were granted any relief, we see no occasion for going into other transactions, except to show the devious ways of the McCallisters. It was not until late in December, 1920, or early in January, 1921, that Bartlett Brothers Land & Loan Company learned that the Reuben Payne note had not

been paid and the deed of trust had not been cancelled as directed. This suit was filed February 25, 1921, and had been pending nearly eight months when the new bank failed. When the Commissioner of Finance took over its assets on October 13, 1921, the notice required by law to all creditors was duly published. The plaintiffs in this suit filed no claim against the new bank with the Commissioner of Finance within four months after said notice.

We have only briefly sketched the facts which we regard as essential to an understanding of the issues before us. If further facts appear important, they will be stated in the course of the opinion.

I. Appellants contend that this suit cannot be maintained because respondents have not complied with Section 11720, Revised Statutes 1919 (Laws 1915, page 123). They also contend that the suit should have been dismissed under the provisions of Section 11700, subsection (3), Revised Statutes 1919.

**Dismissal: Waiver.**

Section 11720 is a limitation upon the right of creditors of an insolvent bank to bring suit against it or the Commissioner of Finance. It authorizes the filing of suits upon claims which the commissioner has not approved and provides that the petition in such suits shall allege and the plaintiff shall be required to prove "that the claim upon which the action is instituted was duly filed and that sixty days have elapsed since the expiration of time for filing said claims and that said claim has not been approved." Said section appears to have no application to actions instituted against the bank before its assets are taken over by the Commissioner of Finance.

Assuming, without so deciding, that Section 11700, subsection (3), applies to suits pending against the bank when the commissioner takes charge and that the commissioner might have had the suit at bar dismissed under said section, had he sought to avail himself of his right, we are satisfied that he waived his right to have same dismissed. The suit was pending against the new bank when the commissioner closed it and took over its assets. Within four months after the commissioner gave the statutory notice and at a time when respondents could have timely presented to him for approval a claim against the bank under Sections 11716 to 11719, inclusive, if they deemed such action necessary, the following stipulation was filed:

"Comes now John G. Hughes, Commissioner of Finance, and by leave of court files certificate showing that as such Commissioner he has on October 13, 1921, taken charge of the Milan State Bank and all its assets. Defendant Bank Commissioner, on behalf of himself or the Milan State Bank, waives the question of dismissal or abatement of this cause under and by virtue of the certificate which he has herewith filed or any other authority which he may claim to be con-

ferred upon him by Section 11700, Revised Statutes of Missouri, 1919, and agrees not hereafter to raise the question of jurisdiction of this court to proceed to the trial or adjudication of this cause, and cause continued by agreement.''

But for such waiver and if so advised, respondents could have dismissed this suit, filed their claim with the commissioner and, upon failure of the commissioner to approve same, could have timely filed another suit upon the same cause of action. The same result was accomplished by filing the waiver in the pending suit and permitting it to proceed against the commissioner. The law does not require the doing of a useless thing.

Appellants contend that the commissioner had no power to waive the statutory requirement that actions pending against the bank at the time he took it over should be dismissed. The provision is for the benefit of the commissioner to prevent inconvenience and embarrassment to him in the orderly administration and settlement of the affairs of insolvent banks and we are unable to see any good reason why he may not waive the benefits of the provision as he undertook to do. We think the provision for dismissal is directory and not mandatory.

An additional reason for upholding the waiver is that it would be exceedingly unjust to permit the commissioner to take advantage of respondents' reliance upon his waiver after the time has elapsed when they could file their claim with the commissioner and institute suit in compliance with Section 11720. The trial court properly ruled that respondents could maintain the suit under the circumstances.

II. Since the trial court only impressed upon the assets of the new bank a trust to the extent of $16,600 and interest, and disallowed the remainder of the claim of the Bartlett Brothers Land & Loan Company, and disallowed entirely the claims of Ralph and Erwin Bartlett and of Homer F. Schooling, and plaintiffs did not appeal, we need concern ourselves only with the correctness of the trial court's judgment in favor of Bartlett Brothers Land & Loan Company, appealed from by the commissioner and the new bank.

The facts in respect to the transaction whereby the $16,600 was transferred from the account of McCallister and Schooling to the old bank are thus set forth in the agreed statement:

"May 10, 1920, this account was charged with $16,600 on a check for like amount drawn by McCallister and Schooling in payment for two notes then owned and held by the bank and sold and delivered by the bank to Joe McCallister or the McCallister Loan Company, which said two notes were as follows:

"One note for $10,600, payable to Joe McCallister, dated April 22, 1920, and due one year after date with interest from maturity at the rate of six per cent per annum, signed by Gus Hoselton and Mary F. Hoselton and endorsed by Joe McCallister.

"The other note for $6,000, payable to the Milan Bank, executed by Mark E. McCallister or the McCallister Loan Company, which was not due on May 10, 1920.

"The Gus Hoselton note was not assigned or endorsed by the bank, but transferred by delivery."

It appears that the old bank actually got the sum of $16,600 of the money and in consideration therefor transferred to Joe McCallister or McCallister Loan Company two notes not yet due, but entirely worthless at the time, as the trial court doubtless found. Thus the old bank got $16,600 of the money without valuable, or at least without adequate, consideration, and did so with the full knowledge of its cashier, who was its executive officer, of all the conditions and requirements under which respondents sent their check for $29,355 to McCallister Loan Company.

The contentions of appellants, the Finance Commissioner and the new bank, are thus stated:

"Appellants' reliance is based upon the legal contentions, that the remittances made by plaintiffs to their agents, the McCallisters, were not, under the conditions under which they were sent, impressed with a trust; that, however, even if they were impressed with a trust in the hands of these agents, their trust character did not follow them when they were placed on deposit with the old Milan Bank, because the deposits were general and not special, and because this bank had no actual notice of the facts relating to these remittances and is not chargeable with constructive notice of these facts through the knowledge of its cashier, Joe McCallister, since the latter was not acting for it in this transaction, but acquired his knowledge while acting in his personal capacity and as agent for the plaintiffs; that, in no event, even if it were true that these remittances were impressed with a trust in the hands of the McCallisters and that this trust character followed them when they were deposited in the old Milan Bank, nevertheless they ceased to be impressed with a trust in the hands of appellant Milan State Bank, by reason of the fact that, in acquiring the assets of the old Milan Bank in consideration of the assumption of its obligations, the Milan State Bank had no knowledge, actual or constructive, that any trust existed in favor of or was claimed by plaintiffs or either of them, and by reason of the fact, also, that the record shows that only $618.65 of the amounts deposited to the account in question remained to the credit of that account when the Milan State Bank acquired the assets of the Milan Bank— the balance having been checked out previously."

III.   We entertain no doubt that, in the hands of McCallister Loan Company, the proceeds of the Bartlett Brothers Land & Loan Com-

**Trust Fund.** pany's check constituted a trust fund. The money so entrusted to them was for a particular and specified purpose, a part of which was to satisfy the Reuben Payne note and for the deed of trust to be cancelled. The McCallisters were not mere agents to pay over the money to Schooling.

In 39 Cyc. 17, a trust is defined as an obligation upon a person arising out of a confidence reposed in him to apply property faithfully and according to such confidence; a holding of property subject to the duty of employing it or applying its proceeds according to the directions given by the person from whom it was derived. When the McCallisters received the check it became their duty as trustees to use the proceeds as directed by Bartlett Brothers Land & Loan Company and, when they permitted the money to be deposited to the credit of McCallister and Schooling and to be used for purposes other than those for which it was entrusted to them, they violated their trust. [Harrison v. Smith, 83 Mo. 210; Leonard v. Latimer, 67 Mo. App. 138.]

IV. The deposit made to the credit of McCallister and Schooling was on its face a general deposit. Did the old bank have such knowledge of the trust character of the funds deposited in the McCallister and Schooling account as to put upon said bank the duty to see that said money was paid in accordance with the trust? The question would be free of difficulty if Joe McCallister had been acting only for the bank and not for himself in accepting the deposit, for it is admitted that he knew all about the conditions under which the McCallister Loan Company came into possession of the check and also knew the conditions under which its proceeds passed to the account of McCallister and Schooling. [Evangelical Synod of North America v. Schoeneich, 143 Mo. 652.]

**Knowledge of Bank.**

The general rule is that knowledge or notice of facts possessed by an officer of a corporation, which would ordinarily be deemed knowledge of or notice to such corporation of such facts, will not be deemed to be such knowledge or notice when such officer is dealing personally with the corporation. [Bank v. Lovitt, 114 Mo. 519, and cases cited in appellants' brief.]

It is admitted that the only officers or directors of the old bank having knowledge of the trust character of the proceeds of the Bartlett Brothers Land & Loan Company's check were the two McCallisters and Schooling. They participated in the misapplication of such proceeds and their interest was adverse to the interest of the bank. Respondents contend that the knowledge of the officer is knowledge of the corporation, although he is dealing with such corporation in his own interest, if such officer is at the same time the managing officer of the corporation and acts as the sole representative of the

corporation in the particular transaction. This then is the very heart of the question before us. Joe McCallister was acting in his own interest in depositing the proceeds of the check to the McCallister and Schooling account and in misapplying such proceeds. At the same time he was acting as the sole representative of the old bank. The facts come squarely within the rule contended for by respondents. We think that rule is supported by the overwhelming weight of authority. In Leonard v. Latimer, 67 Mo. App. 1. c. 146, it was said:

''The rule declared in Bank v. Lovitt, 114 Mo. 519, to the effect that, 'when an officer of a corporation is dealing with it in his individual interest, the corporation is not chargeable with his uncommunicated knowledge of facts derogatory to his title to the property which is the subject of the transaction,' cannot be used here to protect the bank as an innocent holder of the diverted trust fund in question. As said in Steam Stone Cutter Co. v. Myers, 64 Mo. App. 527, that principle has usually, if not always, found its application when one officer of the corporation shall have notice and then deal with other officers who are innocent. And it is held in such cases that he does not, in the particular transaction, represent the corporation, but himself alone; the knowledge he has, under such circumstances, he is under no obligation to disclose, and hence notice will not be imputed to the corporation principal. But the facts of the case at bar take it out of that line of decisions. Here Thompson was the sole representative of the bank; he had the exclusive management of its affairs; he, as agent for Leonard, and holding in trust the latter's money, turned it over to the bank on whose account he, as its agent, received and misapplied it.

''Under these circumstances we think it clear that the Sedalia bank was at the time chargeable with knowledge of Thompson's fraud, and that it took plaintiff's money with full notice of the trust impressed thereon. We cite a few of the leading authorities sustaining this conclusion. [Bank v. Town of Milford, 36 Conn. 93; Atlantic Mills v. Indian Orchard Mills, 147 Mass. 268; Holden v. Bank, 72 N. Y. 286; Bank v. Babbidge, 36 N. E. 462; Smith v. Farrell, 66 Mo. App. 8; Steam Stone Cutter Co. v. Myers, 64 Mo. App. 527.]''

Other cases cited by respondents which fully support this rule are Latimer v. Equitable Loan Co., 78 Mo. App. 1. c. 467; Bank of Amsterdam v. Welliver, 215 Mo. App. 1. c. 256; Citizens Trust Co. v. Coppage, 227 S. W. (Mo. App.) 1. c. 1059; State v. American State Bank of Aurora, 187 N. W. (Nebr.) 769; Tatum v. Commercial Bank, 69 So. (Ala.) 1. c. 512.

None of the cases relied upon by appellants are cases where the agent of the corporation was acting in the transaction with the corporation adversely to the corporation and at the same time as sole representative of the corporation. In Bank v. Fitze, 76 Mo. App.

l. c. 363, the board of directors, on behalf of the bank, authorized the action taken by the cashier who was personally interested. In Benton v. German-American National Bank, 122 Mo. l. c. 339, the cashier dealt with the bank in his own undertaking through the discount board of the bank and there was no evidence that the cashier communicated to such board any knowledge he had of valid defenses to the note discounted. In Bank v. Lovitt, 114 Mo. 519, the vice-president of the bank transacted his personal business with his bank through the president of the bank, and the president and cashier were both active officers. They had no actual notice of defenses to the note. The cases of Leonard v. Latimer, and Latimer v. Equitable Loan Company, were cited by respondents and support the contention of respondents.

Several cases from other states are cited by appellants. In Bank v. Bryan, 72 W. Va. 29, it does not appear that the president and cashier of the bank, who were interested in the notes endorsed and afterwards taken up by the bank, were the sole representatives of the bank in securing its endorsement on the notes. In Pueblo Savings Bank v. Richardson, 39 Colo. 319, the cashier pledged his shares of stock in the bank, upon which the bank had a lien for an indebtedness due to it from him. His knowledge of the pledge was held not to be knowledge on the part of the bank. He was in no sense engaged in a transaction for the bank when he pledged his own shares of stock in violation of the bank's lien thereon.

In Hilliard v. Lyons, 180 Fed. 685, the cashier was not the officer of the bank who discounted defendant's note and his knowledge of failure of consideration was held not to be imputable to the bank. In Melton v. Pensacola Bank & Trust Co., 190 Fed. 126, the bank was held not chargeable with knowledge of facts known to its cashier concerning the want of consideration for notes which such cashier pledged to the bank to secure his own debt "since, in the matter of pledging these notes to the plaintiff, he was not acting in its behalf, but was dealing at arm's length with the plaintiff and acting solely in his own interest."

Appellants also cite Morse on Banks & Banking (5 Ed.) vol. 1, sec. 166, where it is said that, "If the cashier is acting in his personal capacity either in dealing with the bank or in dealing with a third party the bank is not bound by any knowledge which he may acquire." But it is also said: "If one who is a partner deals with himself as cashier of the bank his knowledge is imputed to the bank, but if he deals with others representing the bank his knowledge is not so imputed."

None of the cases cited by appellants support their contention that, under the facts in this case, the old bank was not chargeable with knowledge possessed by Joe McCallister. that the proceeds of the

Bartlett Brothers Land & Loan Company check constituted a trust fund. In transferring those funds to the McCallister and Schooling account and in checking them out in violation of the instructions given to the McCallister Loan Company, Joe McCallister was acting for himself and his associates. In accepting the deposit and permitting it to be transferred to McCallister and Schooling and thereafter checked out, McCallister was the sole representative of the bank and it was charged with the knowledge possessed by him. We cannot escape the conclusion that the old bank had knowledge of the trust character of the fund and knowingly permitted it to be improperly diverted from its trust purpose and for that reason that its assets became impressed with a trust in favor of the owners of the fund.

For a still stronger reason the bank should be held liable for the portion of such fund which came to it in payment for $16,600 of worthless notes. To that extent it took the money out of the trust fund without consideration and to that extent its assets were increased.

V. Appellants take the position that, even if the proceeds of the check became a trust fund in the hands of the McCallisters and such trust character followed the money when it was **Void Directors'** deposited in the old bank, nevertheless such funds **Meeting: Defense** had no trust character in the hands of the new **of New Bank.** bank because of the arrangement under which it took over the assets of the old bank in consideration of the assumption of its obligations without knowledge on the part of the new bank that any trust existed in favor of respondents and because only $618.65 of the McCallister and Schooling account was turned over to the new bank by the old bank.

If the contention of respondents now to be noticed is correct, it is unnecessary to detail the terms of the alleged agreement under which the new bank took over the assets of the old bank and assumed its obligations. Respondents say that the purported action of the board of directors of the old bank, in turning over its assets to the new bank, was void, because part of the directors were not present at the meeting which authorized the action. It was a special meeting and four of the directors of the old bank were not present and were not even notified that the meeting was to be held. Respondents cite Chouteau Insurance Co. v. Holmes, 68 Mo. 601; Hill v. Rich Hill Mining Co., 119 Mo. l. c. 24; Brinkerhoff Zinc Co. v. Boyd, 192 Mo. l. c. 613; Calumet Paper Co. v. Haskell Printing Co., 144 Mo. 331, and State ex rel. v. Rubber Co., 149 Mo. l. c. 202. Said cases sufficiently support respondents' contention in this respect. For this reason there was no valid and binding agreement under which the new bank undertook to discharge the obligations of the old bank in consideration of acquiring its assets apparently free from trusts im-

pressed upon such assets. The new bank, therefore, took the assets of the old bank into possession as it found them and notice of the claim of respondents that such assets were impressed with a trust in their favor was not necessary. As such assets were impressed with a trust in the hands of the old bank, they came into the possession of the new bank similarly impressed with such trust. Manifestly the Commissioner of Finance took no better title to said assets than that possessed by the new bank.

VI. Finally it is contended by appellants that "the plaintiffs, having elected to accept an assignment from defendant Joe McCallister of certain assets for the purpose of recouping the losses which they allege, are estopped from proceeding against the assets of the Milan State Bank to recover for the same alleged losses."

Election:
Estoppel:
Pleading.

The answers of the Milan State Bank and the Commissioner of Finance were general denials, coupled with a plea that plaintiffs had not filed their claims with the Commissioner of Finance within four months after he took charge of the assets of the bank and gave notice to creditors. The defense that plaintiffs had made an election of remedies was not pleaded. 20 Corpus Juris, 37, section 32, lays down the general rule that "an election of remedies being an affirmative defense, it must be pleaded in order to be available." To the same effect is Horigan Realty Co. v. First National Bank, 273 S. W. (Mo. App.) l. c. 777. Estoppel *in pais,* when relied upon as a defense, must always be pleaded. It is an affirmative defense. Our reports abound with cases so holding. The plea that respondents elected and pursued an inconsistent remedy is here urged as estopping them from pursuing a remedy against the bank by impressing a trust on its assets. Having failed to plead such defense it cannot now be urged, and we need not consider such contention upon its merits.

VII. We conclude that the trial court was fully warranted in holding that the proceeds of the Bartlett Brothers Land & Loan Company's check were a trust fund in the hands of McCallister & Company, and that the old bank had knowledge of the trust character of such funds when they were deposited to the credit of McCallister and Schooling, and that it had knowledge of such trust character when it received $16,600 of such fund in exchange for two worthless notes. The old bank's assets were thereby increased and became impressed with a trust in respondents' favor to that extent at least. When the Milan State Bank took over the assets of the Milan Bank, such trust character followed and continued to be impressed upon such assets and such assets came into the hands of the Commissioner of Finance thus burdened. Appellants cannot justly complain of the judgment rendered by the trial court.

It is accordingly affirmed. All concur.