IN RE LIQUIDATION OF LINN COUNTY BANK, E. M. LOMAX, TRUSTEE, ETC., APPELLANT, v. LINN COUNTY BANK ET AL., RESPONDENTS.[*]

Kansas City Court of Appeals.   January 3, 1928.

[*]Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 602, p. 708, n. 54; Banks and Banking, 7CJ, section 134, p. 533, n. 86; section 135, p. 534, n. 90; section 545, p. 750, n. 62; section 548, p. 752, n. 81; Estoppel, 21CJ, section 248, p. 1242, n. 92; Trusts, 39Cyc, p. 548, n. 75.

*Thos. P. Burns* for appellant.

*Charles K. Hart* for respondent.

BLAND, J.—This is a claim of one E. M. Lomax, Trustee, against the Linn County Bank (hereinafter called the bank) and C. E. Greenlee, Deputy Commissioner of Finance. The bank became insolvent on March 6, 1925, and is now being liquidated and wound up by the deputy commissioner. Plaintiff seeks to have a preferred claim allowed to be paid out of the general assets of the bank now in the hands of the deputy commissioner. The court refused to allow the claim as a preferred one but directed that it be allowed as a general claim. Plaintiff has appealed.

The facts show that Lomax was trustee under the will of Mrs. E. C. Robinson, the mother of one Minnie Stambach. The will provided that the money therein directed to be turned over to Lomax was to be held by him as trustee for the daughter during her natural life; the power given the trustee was to "invest said money in United States bonds or loan the same out on good real estate security and pay the net income thereon in monthly installments as nearly equal as possible to my said daughter, Minnie Stambach, as long as she lives."

The bank had a practice of borrowing bonds to be used as collateral and for the use thereof paying the lenders one per cent. interest above the interest that the bonds bore upon their face. On March 6, 1924, the board of directors passed a resolution authorizing the bank to borrow bonds not to exceed the sum of $50,000 and to pay the owners for their use the sum of one per cent interest, the bank to have the privilege of using the bonds as collateral. On March 7, 1924, and sometime prior thereto, Lomax was president of the bank and on that day had in his possession as trustee under the Robinson will bonds of the value of $4850. On the day last mentioned Lomax as trustee entered into a written agreement with the Linn County Bank represented by himself as its president, wherein he agreed to lend the bank the $4850 in bonds which he held as trustee for Minnie Stambach. The agreement recites that the bonds were lent "with permission to said bank to pledge the same as collateral for any note or obligation of said bank." The agreement further recites that Lomax was to be paid as trustee of Minnie Stambach interest at the rate of one per cent per annum for the use of the bonds. The government at this time was depositing the proceeds of postal savings in the bank, these proceeds being from postal savings received at the post office in Brookfield. The government required collateral to be deposited in Washington to secure the repayment of these deposits to it and Lomax, as president of the bank, immediately after the time that he lent the bonds to the bank sent them to Washington to secure the government deposits in the bank as aforesaid.

Shortly after the bank failed some correspondence ensued between the Deputy Commissioner of Finance and the treasury department at Washington, resulting in the sale of the bonds by the Treasurer of the United States. The Treasurer deducted from the total proceeds of the sale the sum of $2912.92, being the amount of the indebtedness of the bank to the government, leaving $1920.46, the balance of the proceeds from this sale of the bonds. This latter sum was remitted by the government to the deputy commissioner who received the same on April 13, 1925, and entered it on the records of the bank as "Stambach Estate, E. M. Lomax, Trustee, $1920.46." This item was carried in this manner on the records of the bank from April 13, 1925, to November 2, 1925, when the deputy commissioner changed the entry to "loss account," which meant losses sustained after the commissioner took charge of the bank. This sum was used to pay such losses.

The evidence shows that Minnie Stambach was not a depositor or customer of the Linn County Bank and had no relation with it. However, Lomax testified that he advised her that the bonds had been lent to the bank and "put up with the government at Washington." There was no testimony tending to show that she acquiesced in this procedure.

It is insisted that the court erred in not allowing the claim in full as a preferred one. We think the court should have allowed the claim as a preferred one in part but not in its entirety. It is not denied that Lomax was trustee of an express trust with limited powers and that he had no authority under the will of Mrs. Robinson to lend these bonds to the bank. There is no question but that the bonds were impressed in the hands of the bank with the trust in favor of Minnie Stambach. [Bartlett v. McCallister, 289 S. W. 814; Horigan Realty Co. v. First National Bank, 273 S. W. 772; Park Bank v. Yerington, 275 S. W. 970.] Respondent's contention that the bank had no notice of the provisions of the will of Mrs. Robinson is not well taken. The answer recites that "The Linn County Bank had full knowledge of the facts in connection with the loan of said bonds to said Linn County Bank." However, regardless of this, there is no merit in the contention. It is argued that Lomax was dealing with the bank in his own interest as trustee and therefore his knowledge as trustee was not the knowledge of the bank. There is authority holding that where a bank officer is acting as a trustee, the knowledge acquired in his latter capacity is imputed to the bank in his dealings with it (7 C. J. 534), but it is unnecessary for us to go to the extent of so holding in this case. The rule laid down in Bank v. Lovett, 114 Mo. 519, and like cases, relied upon by the respondent, applies only to a situation where one officer of a bank has notice and then deals with another officer who is innocent in a matter in which the former has an individual interest. But where the officer of a bank is its sole representative in the transaction, then his knowledge of facts derogatory to his title is the

knowledge of the bank. [Bartlett v. McCallister, supra, 818, 819, and cases therein cited.] So we must hold that the bank in the case at bar had all the knowledge that Lomax had when on March 7th he executed the loan agreement wherein the bonds were lent to the bank, he representing the bank as well as himself as trustee. The bank having all the knowledge that Lomax possessed, did not receive the bonds in good faith.

The cases of Paul v. Draper, 158 Mo. 197, and Missouri Mutual Ass'n v. Holland Banking Co., 290 S. W. 100, cited by the respondents, are not in point. In those cases there was no question as to the right of the bank to receive the deposits, and the depositors had a perfect right to make them. The question involved was merely whether the deposits were general or special.

It is claimed—"E. M. Lomax, the trustee cannot be heard to set up his own bad faith, if any, with the estate he represented as trustee in diverting the funds thereof from the purpose for which he held them, to another purpose, in order to secure a preference for the estate of Minnie Stambach. . . . A trustee cannot be permitted to say that his estate was one of the creditors of the bank when it makes the investment, and to deny that this relation of debtor and creditor existed, for the purpose of getting a preference, when things go wrong and the bank has failed."

It is not pointed out wherein the bank was in any wise deceived by the action of Lomax in lending the bonds to it. As before stated, his information was the bank's information. However, there was no estoppel pleaded and respondents are not in position now to urge a matter of that kind. [Bartlett v. McCallister, supra; Horigan Realty Co. v. Bank, supra.] We need not go into the question as to how far a trustee who has exceeded his authority can be estopped when he has no personal interest but the rights of his estate, only, are involved.

The only question that remains is whether or not the funds in the hands of the Commissioner of Finance were swelled by the bonds belonging to the trust estate. There is no question but that the assets in his hands were augmented in the amount of $1920.46, remitted to the deputy commissioner by the government after the sale of the bonds, but we think that they were not augmented to the extent of the full value of the bonds. The evidence shows that the bonds were dissipated to the extent of the amount retained by the government covering its deposits to the bank. The government had no notice of the trust character of the bonds and there does not appear to be any claim that the government had no right to dispose of them. But see on this question 7 C. J. 750. However, the government is not a party to this suit and whether it pursued the proper course in protecting its rights is not involved. It appears plain enough that as a result of the action of the government the bonds have been dissipated to the

extent of $2912.92. The bonds themselves were never in the hands of the deputy commissioner.

It was held in the case of Nichols v. Bank of Syracuse, 278 S. W. 794, 797, that—"In order to have been a dissipation of the trust fund, it must be shown either that that fund can be traced specifically, and that it has been dissipated, without augmenting the funds of the trustee, or that the general fund with which the trust fund was wrongfully mingled has all been dissipated, and the entire estate of the insolvent trustee has arisen from other sources."

The rule that where the trustee mingles the trust money with his own there is a legal presumption that the partial withdrawal of the fund by him was from his own money and the balance remaining included the trust fund, has no application here because the trust property has been traced and it is shown that it has been dissipated to the extent of $2912.92, and that the estate now in the hands of the finance commissioner has not been swelled to that extent by this dissipation. Of course, when the bank received these bonds its assets in a sense were swelled to the amount of the bonds but that is not what is meant when the question of augmentation of assets arises. The assets must have been increased in the hands of the commissioner of finance. [See Brennan v. Tillinghast, 201 Fed. 609, 612, 613; Horigan Realty Co. v. First National Bank, supra; Nichols v. Bank, supra; Thomson v. Bank of Syracuse, 278 S. W. 810.] There is nothing in the cases of Stoller v. Coates, 88 Mo. 514, Bank v. Brightwell, 148 Mo. 358, Pundmann v. Schoenich, Admr., 144 Mo. 149, Evangelical Synod v. Schoenich, 143 Mo. 652, inconsistent with the holding in the later cases we have just cited. We think, therefore, that while plaintiff is not entitled to preference for the full amount of the bonds, he is entitled to preference for at least the sum of $1920.46.

Of course, the government had a right to come in as a common claimant, if it had desired, instead of selling its collateral, and there is authority that it should have first exhausted its right as a common claimant before selling the security. [7 C. J. 750.] Had it pursued this course, the assets in the hands of the commissioner of finance would have been lessened to the extent of the amount that would have been allowed it as a common claimant and even though it, in fact, pursued the right course in selling the bonds without proving its claim, by the method it followed it has saved the bankrupt estate the amount of its claim as a common claimant. In this sense the estate in the hands of the deputy commissioner is better off by reason of the use of the bonds belonging to the trust estate. We, therefore, think that in addition to the sum of $1920.46, plaintiff is entitled to a preferred claim to the extent of the money that the government would have been allowed as a common claimant had it first proved up its demand.

The judgment is reversed and the cause remanded with directions to allow these two items as a preferred claim and the balance of plaintiff's demand as a common claim. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.