MERCANTILE TRUST CO. v. ST. LOUIS & S. F. RY. CO. et al.

In re WOLFF.

(Circuit Court, D. Missouri, E. D. February 9, 1900.)

No. 3,768.

1. RAILROADS—PURCHASER AT FORECLOSURE SALE—LIABILITY UNDER DECREE.
   A purchaser of all the property of a railroad company under a decree of foreclosure, which required such purchaser to pay all liabilities incurred by the original company which were prior in lien to the mortgage foreclosed, may be held to account for a fund held in trust by the original company, in so far as, under the principles of equity, such fund could have been recovered by the cestui que trust from the receiver.

2. TRUSTS—INSOLVENCY OF TRUSTEE—RIGHT TO FOLLOW TRUST FUND.
   A railroad company which held in trust a fund to be used for the benefit of another company became insolvent, having expended but a part of the fund which it had deposited in its current bank account. *Held*, that by such mingling of the money with its own the trust became impressed

upon the entire fund in the bank, and so much of such fund as could be identified in the hands of the receiver was recoverable by the beneficiary, but that, such identification was limited to the smallest amount in the bank account at any one time after the trust fund was deposited, although a larger sum came into the receiver's hands.

In the Matter of the Intervening Petition of A. L. Wolff, Receiver of the Kansas Midland Railway Company.

Burrill, Zabriski & Burrill and Sam H. West, for intervener.

L. F. Parker and J. T. Woodruff, for defendants.

ADAMS, District Judge. In the year 1888 the Kansas Midland Railway Company delivered certain of its bonds to the St. Louis & San Francisco Railway Company in trust to sell the same, and apply the proceeds of sale in the equipment and improvement of the railroad of the Kansas Midland Railway Company. The St. Louis & San Francisco Railway Company (hereafter called the "Frisco Company") sold the bonds, realized therefor $367,586.50, and expended in the due execution of the trust $324,554.82, leaving a balance of $43,031.68 unaccounted for. On receipt of the proceeds of the sale of the bonds in 1888, the Frisco Company deposited the same in a general account kept by it, together with other moneys, and thereafter, from time to time, deposited in that account its current and other receipts, and drew out, as occasion required, money for the equipment and improvement of the road of the Kansas Midland Railway Company, as well as for the payment of its other and personal obligations. The balance to the credit of the Frisco Company in this general account varied from time to time according to the deposits in, and checks against, the account; at all times, however, up to December 23, 1893, showing some balance on hand. On November 15, 1890, the balance amounted to $2,265.55. This remained unchanged from November 15 to December 12, 1890, after which further deposits were from time to time made, resulting in fluctuating balances until December 23, 1893, the date of the appointment of the receiver for said Frisco Company, when it stood at $36,522.28. This last-mentioned sum came into the hands of the receiver. It appears that the St. Louis & San Francisco Railroad Company, or the "New Frisco Company," as it is called, which became the purchaser of all the property of the Old Frisco Company at a sale under a decree of foreclosure in the main case, took its rights under and subject to the provisions of the decree, requiring it to pay, among other things, all liabilities incurred by the Old Frisco Company, which were prior in lien to the consolidated mortgage under which the foreclosure was had. The special master to whom this intervention was referred reports that the balance which came into the hands of the receiver, namely, $36,522.28, was subject to the original trust in favor of the Kansas Midland Railway Company, and should be now paid to the intervener, who is the duly-appointed receiver of the Kansas Midland Railway Company, by the New Frisco Company, under the provisions of the decree of foreclosure in the main case.

Numerous exceptions are taken to the report of the special master, but two of them only were seriously argued, and involve all that is

necessary for a final disposition of the case. The first is that the special master erred in holding that the Old Frisco Company ever became a trustee with respect to the bonds in question, or ever became subject to the equitable doctrine governing trustees, but became a simple debtor to the Kansas Midland Railway Company for any unexpended balance of the money received by it as proceeds of the sale of the bonds in question. The second is that the special master erred in subjecting all the balance found to the credit of the Old Frisco Company in its depositories at the time the receiver was appointed for that company, to the satisfaction of the intervener's claim.

As to the first of these questions, I am entirely satisfied with the conclusion reached by the special master, and will content myself by the statement that the documentary proof in the case clearly creates the relation of trustee and cestui que trust between the Old Frisco Company and the Kansas Midland Railway Company with respect to the proceeds of the bonds in question, and that as a result the defendant, as successor to the Old Frisco Company, under and by virtue of the decree of foreclosure in this case, must be held to an account on the theory of an original trust in the Old Frisco Company, so far as the principles of equity applicable to the facts of the case will permit.

The second exception raises the question whether, under the facts as already stated, the trust and obligation of the Old Frisco Company attached to the entire $36.522.28 turned over to the receiver, or only to the $2.265.55, which is the minimum balance at any one time of all the funds with which the trust fund was commingled. Counsel have called attention to a large number of cases, both state and federal, in which the doctrine applicable to this case has been discussed; and, while there is some diversity of opinion found in the cases, I have reached the conclusion that the weight of authority, as well as reason, conduces to the result that the intervener's right to recover the trust fund in question must depend upon his ability to trace it, or the fund with which it was commingled, into the hands of the receiver of the Old Frisco Company. It is now the settled doctrine that commingling a trust fund with the private funds of the trustee does not destroy the right of the cestui que trust to follow it. The commingling being wrong, the entire fund is impressed with the trust; and, as long as an amount equal to the trust fund remains in the commingled mass, the same, and all of it, to the extent of the trust fund, will be made to respond to the claim of the cestui que trust. This last-mentioned rule is in perfect correspondence with the rule first announced, requiring the cestui que trust to show that his money or property is in the hands of the trustee. It simply enlarges the rule, and allows recovery when and so far as the commingled fund in which the trust fund has been inextricably confused is found in the hands of the trustee. The foregoing propositions I believe to be fully supported by the authorities, and they are well set forth in the able opinion of Judge Phillips in the case of Metropolitan Nat. Bank of Kansas City v. Campbell Commission Co. (C. C.) 77 Fed. 705. A large number of cases are referred to and commented upon in this

last-mentioned case, supporting the conclusion reached. There is another line of authority announcing the proposition that because a trust fund, when appropriated by a trustee to his own use, swells his assets, the general estate of the trustee, when insolvency supervenes, will be impressed with a trust for the reimbursement of the cestui que trust, on the ground that such estate has been benefited to an equal amount by the trustee's breach of duty. But this rule, as I understand it, has not received the sanction of any federal court, and of but few state courts. The equity, or, rather, want of equity, of such a rule is well characterized by the court of appeals of New York in the case of Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504, in which it is said:

"We think this is quite too vague an equity for judicial cognizance, and we find no case justifying relief upon such a circumstance. In a very general sense, all creditors of an insolvent may be presumed to have contributed to the assets which constitute the residuum of his estate."

So it seems to me. If the fact that the money or property transferred to a trustee has so increased his assets as, in and of itself, to entitle the creditor to a preference, why will not all general creditors be entitled to the same preference? The consideration of their debts has at some time enhanced the funds or estate of the debtor. Following the well-settled rule already stated, that the entire account with which trust funds have been commingled may be appropriated for the satisfaction of the trust, and giving the intervener the full benefit of that rule, I am of opinion that the minimum amount found at any one time in the account of the Frisco Company must be the maximum amount of the trust fund which by any possibility can be traced into the receiver's hands. Between November 15 and December 12, 1890, this minimum amount stood at $2,265.55. This may possibly have included a part of the original trust fund. At any rate, it is the remnant of the fund with which it was originally commingled. All the trust fund, excepting this remnant, had been before November 15, 1890, dissipated or appropriated to the trustee's own use. The identification of the original trust fund is here lost, as to all thereof except the remnant of $2,265.55; and certain it is that no part of the original trust fund can be traced into any of the deposits clearly shown to have been made by the Frisco Company after December 12, 1890. It was conceded at the argument that if in November, 1890, the whole account had been drawn out by the Frisco Company, so that nothing remained, the tracing or identification of the trust fund would no longer have been possible, and that no subsequent deposits would have been subject to the original trust. This concession was manifestly made on the ground that no part of the original trust fund could be said to be mingled with that which was subsequently deposited. If that argument is sound,—and I think it is,—the same conclusion should follow as to all funds subsequently deposited over and above the small remnant then on hand (for it is clear that all trace of the trust fund was lost, except as to that remnant), and that this remnant represented the full amount of which, by any possibility, the original trust fund could then have formed a part. It follows that the intervener has failed to prove that any of the money of the Kan-

sas Midland Railway Company, either in its original or commingled form, came into the hands of the receiver of the Frisco Company, beyond the sum of $2,265.55, and that all trace or identification of the balance of the original trust fund is impossible. All the exceptions to the report of the special master made by both parties, other than those relating to the amount of recovery, will therefore be overruled, and the exception of the defendant to such parts of the report as relate to the amount of recovery will be sustained; and, the case now being submitted to the court, a decree will be entered requiring the defendant, the St. Louis & San Francisco Railroad Company, to pay to the intervener the sum of $2,265.55, with interest thereon from May 15, 1897, the date of filing the intervening petition herein, to the present time, at the rate of 6 per cent. per annum.