ANNIE W. MUSGROVE, JENNIE JACKSON, MOLLIE A. JACKSON and SALLIE T. JACK-SON, Respondents, v. MACON COUNTY BANK OF MACON, MISSOURI, and the CITIZENS BANK OF MACON, MISSOURI, Appellants.

### Kansas City Court of Appeals, July 6, 1914.

1. **BANKS AND BANKING: Conversion: Bills and Notes.** The cashier of a bank took a check payable to the bank for four notes which he sold to the maker of the check (said notes being taken from the list of bills receivable of the bank), entered the amount of the check on the individual deposit ledger, but did not deliver the notes to the purchaser but kept them in the bank papers. The transaction took place without the knowledge of the other officers of the bank. Thereafter the bank failed and later on another bank purchased the assets including the notes in question. It was *held* that the attempted sale of the notes was void, the cashier, being without authority could not sell any of the banks bills receivable without power or authority from the Board of Directors. The check given in payment of the purchased notes also was void, since it was not only unsupported by any consideration but was given in violation of a law which both parties to the transaction were presumed to have had knowledge.

2. ————: ————: **Cashier.** The acts of the cashier done in the ordinary course of business, actually confided to such an officer, may be regarded prima facie as coming within the scope of his duties.

3. **ESTOPPEL: Creditor.** In order that a bank's creditor be estopped in an action for conversion of a bank account, the defendant must be prepared to prove that a certain amount was tendered in money or by check with the express understanding and statement to the creditor that the sum offered is in full settlement of all demands from the debtor to the creditor, and the debtor is required to make it clear that the creditor so understood that the tender and payment was to be in full settlement of all demands from the debtor to the creditor, and the debtor is required to make it clear that the creditor so understood that the tender and payment was to be in full satisfaction and settlement of all demands.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*R. S. Mathews* and *Guthrie & Franklin* for appellants.

*Web M. Rubey, B. R. Dysart* and *Dan R. Hughes* for respondents.

JOHNSON, J.—Plaintiffs, who are called the "Jackson Sisters" in the record and briefs, brought this suit November 6, 1911, in the circuit court of Macon county against the Macon County Bank and afterward caused the Citizens Bank of Macon to be joined as a defendant.

The substance of the cause alleged in the original petition was the conversion of the proceeds of certain notes owned by plaintiffs and left with the Citizens Bank for collection and which, afterward, when that bank had gone into liquidation, were turned over to the Macon County Bank which purchased all the assets and assumed all the liabilities of the defunct bank and after the transfer collected the notes in question and refused to account to plaintiffs for their proceeds. The prayer of the petition was for judgment "against defendant (the Macon County Bank) for the said sum of $4676.04, with six per cent interest thereon from June 15, 1911, or for the surrender to plaintiffs the notes hereinbefore alleged to have been bought of the Citizens Bank on February 27, 1911, and if the said notes be less than the amount due plaintiffs, the difference be payable in cash, and for all necessary orders and decrees."

A change of venue was granted to Randolph county where the case was tried on the third amended petition filed by plaintiffs, the separate answers of defendants and the replies. This petition contained two counts, the first alleging the same facts and the same cause as the original petition and the second pleading

a cause, in substance, for money had and received. After hearing the evidence, the court rendered judgment for plaintiffs on the second count in the sum of $5040.09 and defendants appealed.

The material facts of the case thus may be stated. The Jackson Sisters received from their brother, who was administrator of their father's estate, $5827.44, as the sum of their shares in the estate on final distribution, and one of the sisters (Mrs. Musgrove) went to the Citizens Bank of Macon on February 27, 1911, and deposited the checks or drafts to the credit of the Jackson Sisters. The cashier was the brother-in-law of the sisters and all the transactions between them and the bank were conducted by Mrs. Musgrove and the cashier, in whom the sisters had the greatest confidence. He received the deposit and caused an entry to be made on the individual deposit ledger of the bank "Jackson Sisters, February 27, 1911, $5827.44—. $4900."

Immediately after making the deposit, Mrs. Musgrove told the cashier that she wished to invest the money in good notes and he informed her that he could sell her four notes owned by the bank and she agreed to purchase for the account of the sisters, four notes of the total face value of $4900, which he selected from the Bank's bills receivable. These notes appeared on the note blotter of the bank as

"No. 6094, H. Lee and H. M. Powell . .$ 500
No. 6095, H. Lee and H. M. Powell . . 500
No. 6169, D. M. Halliburton note deed
    of trust ..................... 1400
No. 2347, D. B. Moore note (deed of
    trust) ..................... 2500"

The cashier put a bracket before these entries, thus grouping them together and wrote on the margin the words "Jackson Girls." He drew a check for $4900 to pay the purchase price, signed it "Jackson Sisters" with the consent of Mrs. Musgrove, and

charged it against the deposit. The check was made payable to "Citz. Bank (3 notes) or bearer." The notes were not indorsed and delivered to Mrs. Musgrove, but were allowed to remain in the bank with the understanding that the bank would hold and collect them for the account of the Jackson Sisters. No officer or director except the cashier knew of this transaction, the notes were left in the bank's note pocketbook, were afterwards listed and exhibited by the cashier to the bank examiner as assets of the bank and no entry was made on the books indicating that the check of $4900 had been given in consideration of the sale and transfer of the notes to the Jackson Sisters. Such indication as we have shown appeared on the margin of the note blotter and on the face of the check, but these facts were not brought to the notice of the directors or bank examiner. The inference from the evidence is very strong that the cashier wrongfully converted the proceeds of the check to his own use and concealed from the directors and examiner the facts which showed the purpose for which it was drawn. Afterward Halliburton paid $242 on account of his note to the cashier who credited the amount to the deposit account of the Jackson Sisters and Moore paid $69 which also was credited to that account. On March 2, 1911, the Jackson Sisters bought a house and paid $800 on the purchase price by check drawn on their account by the cashier who signed the check "Jackson Sisters per Lon Hayner" (the cashier.) On June 14, 1911, the bank closed its doors and went into the hands of the bank examiner. At that time the account of the Jackson Sisters on the deposit ledger showed total credits of $6138.44 and debits of $5700 (consisting of the two checks of $4900 and $800) leaving a balance due plaintiffs of $438.44, and the four notes were still among the assets of the bank.

On or about August 1st following the closing of the bank, the Macon County Bank was organized and

took over all the assets of the defunct bank, including
its banking house, furniture and fixtures and except-
ing only certain disputed assets such as the four notes
which, in the meantime, had been claimed by the Jack-
son Sisters as their property. A written contract, ap-
proved by the State Bank Commissioner, was entered
into by the two banks which provided for the transfer
of the assets to the new bank and the payment of all
the debts of the old bank which, including deposits of
$152,440.83, amounted to $157,260.88. A list of the de-
positors was attached which showed the Jackson Sis-
ters as depositors in the sum of $438.44. The recited
assets consisted of loans and securities of $177,303.53,
"as shown by the books of the bank," $6000 in cash, the
leasehold on the banking house and the furniture and
fixtures. The contract recited that the Citizens Bank
"is desirous of turning over all of its said cash, loans
and other assets upon condition that second party will
assume and pay off all sums due from said first party
to its respective depositors and other creditors" and
that the Macon County Bank "is desirous of obtaining
the business and good will of said first party and is
willing to assume the payment of all sums due from
first party to its depositors and creditors." To effect-
uate these purposes the contract required the Citizens
Bank "to turn over and deliver to said second party
all of the cash which it has on hands or to which it
may be in anywise entitled . . . by proper assign-
ment duly executed, to deliver to said second party all
of its bills receivable . . . which said bills receiv-
able are fully set forth in the itemized list hereto at-
tached . . . to assign and deliver to said second
party all the remaining assets of whatever kind and
character including good will and leasehold on banking
house." The contract recited and provided that the
Citizens Bank "simultaneously with the execution of
this agreement has caused certain of its directors to
deposit with the second party, the sum of ten thousand

($10,000) dollars to indemnify said second party against all loss that may be sustained by it in the payment and discharge of the deposits and liabilities of the first party.''

Further the contract provided for the giving of a bond by the Citizens Bank as principal and certain named directors as sureties to further indemnify the purchasing bank from loss and to secure the payment of compensation to it in the sum of $5000 ''for work, labor and expenses in collecting, protecting and handling the assets assigned to it.''

The Macon County Bank agreed ''to and does assume full payment of all sums due from the first party to its depositors, whether the same be sums deposited subject to check or time certificate deposits, as fully as the same is set forth in the itemized statement thereof, marked Exhibit ''A'' and attached hereto. Said time deposits, together with the interest accrued thereon to be paid as they mature, and all other deposits shall be paid by said second party upon application therefor by the respective depositors to and upon the second party. In addition to paying said deposits, said second party assumes and agrees to pay all other creditors of said first party existing at the time of the execution and delivery of this agreement. . . . to collect all loans made by the first party evidenced by its bills receivable . . . to convert the remaining assets to be delivered to the second party into cash at the best price obtainable as fast as circumstances will reasonably permit'' and that ''when the second party shall have received out of the collection and sale of assets sufficient moneys to fully reimburse it for all moneys paid out by it to the depositors and creditors of first party, together with the necessary expenses and accruing interest in accordance with the terms of this contract, then the remainder of the bills receivable and assets of said first party shall either be turned back to the first party or the proceeds therefor upon

final settlement between first and second parties hereto.''

In short, the Macon County Bank, in consideration of the transfer of all the assets of the old bank, the immediate deposit of $10,000 in cash as indemnity against loss and the execution of a bond of indemnity by certain directors of the old bank, agreed, for a fee of $5000 and the benefit it would derive from handling the business, to liquidate the business of the old bank, collect its assets, pay all its debts, and if there was any surplus of assets left after all the debts, including its compensation, were paid, to turn it over to the directors of the old bank.

This contract was carried out by both parties and the four notes were delivered to the Macon County Bank which, owing to the dispute over their ownership, held them in a special account and afterward collected them. We are not overlooking the controversy over the Moore note, but in the view we have of the case, that contest is immaterial and for present purposes, we shall regard that note as having been paid to the purchasing bank and its proceeds placed in the special fund.

Shortly after receiving the assets of the Citizens Bank, the Macon County Bank mailed to plaintiffs an itemized statement of their deposit account, showing a balance of $438.44. Plaintiffs made no objection to this statement and checked out the balance, thereby closing the account. The bank knew of their claim to the four notes which, after the transfer of the notes, was bottomed on the theory that the transferee bank was holding them or their proceeds as the trustee of plaintiffs. Manifestly such was the theory of the original petition which, as stated, was filed against the Macon County Bank alone. In substance it alleged the facts of the transactions between plaintiffs and the Citizens Bank and between the two banks, with the same degree of particularity of our statement of them, and

on the theory that such facts disclosed a valid sale of the four notes to them, plaintiffs sought to recover the notes or their proceeds as a trust fund converted by a recalcitrant trustee. Such also was the nature of the cause alleged in the first count of the third amended petition on which the cause was tried, while the second count, on which recovery was allowed, is founded on the idea that the attempted sale of the four notes to plaintiffs was absolutely void, as was also the check for $4900, and that plaintiffs are entitled to re-- cover on their deposit account without the amount of that check being deducted.

Defendants objected to the inclusion of the second count by amendment, for the reason that it pleaded a cause entirely at variance with, and even repugnant to, the original cause, and later moved that plaintiffs be required to elect on which count they would proceed. These motions were overruled, and we are asked to review these rulings of the court. We shall consider the subjects of the alleged inconsistency and departure after we have ascertained whether or not the facts stated disclose a cause of action against both or either of the defendants.

Our initial inquiry shall be directed to the state of the account between the Jackson Sisters and the Citizens Bank at the time that Bank closed its doors and went into liquidation. The relationship between these parties began with the deposits in the bank of $5827.44 to the credit of the Jackson Sisters. They were represented in that transaction by Mrs. Musgrove and the Bank was represented by its cashier who was its executive officer, held out to the public as having authority to act according to the general usage, practice and course of business of such institutions. The cashier is considered the executive officer of the bank, through whom its whole operations in paying or receiving debts, or in disposing of, or transferring, securities, are conducted. The acts of a cashier, done

in the ordinary course of business, actually confided to such an officer, may be regarded prima facie as coming within the scope of his duties. [Bank v. Bank, 244 Mo. l. c. 577.]

There can be no question that the cashier in receiving the deposit was acting as the agent of the bank within the actual, as well as the apparent, scope of his authority and duties. The deposit was duly entered on the books of the bank and there is no claim, nor room for one, that the relation of banker and depositor was not established by this transaction. The relation of banker and depositor, being that of debtor and creditor, the bank, in this instance, became the debtor of the Jackson Sisters in the amount of the deposit, i. e., $5827.44, and defendants have the burden of proving payment of the debt in whole or in part. The fact of a deposit being shown, the banker, as any other debtor, must affirmatively plead and prove payment if he relies upon that defense in an action for the recovery of the deposit. The item entered on the books of the bank against the deposit, and now in dispute, is the check of $4900, given immediately after the deposit was made, in attempted purchase of four notes belonging to the bills receivable of the bank. In their argument that the bank is entitled to claim credit for the amount of that check, counsel for defendants urge that the cashier was the agent of plaintiffs and not of the bank in that transaction and his conversion of the proceeds of the check which were not turned into the treasury of the bank was the act of their own agent, for which they must suffer.

It is true plaintiffs reposed the greatest confidence in the cashier, that Mrs. Musgrove allowed him to select the notes and to retain them in the bank without indorsement and that, with her consent, he drew the check and wrote upon it the name of the Jackson Sisters. To the extent of drawing and signing the check he was their agent, but in the matter of the pretended

sale of the notes he was acting, as we think the parties understood, in the capacity of the cashier of the bank and the custodian of its securities which became the subject of this transaction. The legal title to these notes was not taken, by indorsement, from the bank, their payee and owner, and vested in plaintiffs, nor was the bank deprived of its possession and control over them. Plaintiffs received nothing for their check, it was wholly without consideration, not alone for the reason that they did not acquire the legal title to the notes, but for the stronger reason that the statutory law of this State (Sec. 1112, Rev. Stat. 1909) expressly and in the most peremptory language prohibits the cashier of an incorporated bank from selling any of its bills receivable "until such power and authority shall have been given such cashier . . . by the board of directors, in a regular meeting of the board, a written record of which proceeding shall first have been made . . . and all acts of indorsing, selling . . . done by said cashier without authority from the board of directors shall be null and void." In Vansandt v. Hobbs, 84 Mo. App. 628, and Long v. Long, 167 Mo. App. 79, we construed this statute to mean that any act in violation of its provisions was not merely voidable but absolutely void; that the obvious purpose of the enactment was to put an end to the temptations besetting executive officers of banking institutions to speculate with or manipulate to their own advantage assets entrusted to their care, and that to hold that the board of directors might afterwards ratify such unauthorized act would be to ignore the plain letter of the statute and to defeat the very purpose of its enactment. A different view was expressed by the St. Louis Court of Appeals in Hume v. Eagon, 73 Mo. App. 271, but since the Supreme Court in the recent cases of Bank v. Lyons, 220 Mo. 538, and Bank v. Bank, supra, have construed the statute as we construed it in the cited cases, the question may be con-

sidered settled and it will not be necessary to certify this cause to the Supreme Court on account of a decision of our sister court which, in effect, has been overruled.

The attempted sale of the notes was void, and being void, the check given in payment of the purchase price also was void, since it was not only unsupported by any consideration, but was given in violation of a law of which both parties to the transaction are presumed to have had knowledge. Plaintiffs had no right to give the check and the bank had no right to accept it. We think the bank is in no position to claim that it took the check innocently, not knowing of the fraudulent purpose and *ultra vires* character of the conduct of the cashier. The check was made payable to the bank, showed on its face that it was for notes purchased from the bank, was accepted by the cashier, entered upon the individual deposit ledger and kept in the bank by its official custodian of such papers. The funds represented by the check, therefore, came into the bank through the regular and authorized channel and the fact that afterwards, by fraudulent omissions and manipulations, the cashier concealed the true nature of the transaction from the other officers, does not alter the master fact that the bank received an invalid check in pretended payment of property it did not, and could not, sell in the manner pursued. Paraphrasing from the opinion in Mills v. Mills, 147 Mass. 1. c. 273, et seq., quoted with approval in Bank v. Bank, supra (1. c. 584): It is the same as if the bank's directors had received the check knowing what the cashier knew. For the purpose of accepting the check, the cashier stood in the place of the bank and was the bank. It is quite immaterial in reference to this question that he was the officer who afterwards misappropriated the funds. The bank must be deemed to have known what he knew and it cannot retain the benefit of his act without accepting the consequences of his

knowledge. It cannot take payment for assets it did not and could not sell and then refuse to surrender the assets or return the money for which it had given no equivalent.

It follows from these considerations that the amount of the check of $4900 was improperly entered on the books against the deposit and that when the bank closed its doors its indebtedness to plaintiffs on the deposit account was the amount found by the trial court and expressed in the judgment which was rendered for plaintiffs in the sum of $5040.09.

Passing to the subject of the liability of the Macon County Bank to pay this deposit, as we view the case, the liability of that bank does not depend on the solution of the questions argued with so much learning and ability of whether or not the contract between the two banks was executory, was *ultra vires,* or by its terms did not impose any greater obligation on the Macon County Bank with reference to this deposit, than to pay plaintiffs the amount shown on the attached schedule of deposits. The fact cannot be gainsaid that the Macon County Bank took all the assets of the Citizens Bank and undertook, for a consideration, to administer them for the benefit, *first,* of the creditors of the Citizens Bank, and, *second,* of the directors and stockholders of that bank. It is an indisputable fact that it has possession and control of those assets which, including the indemnity money and indemnifying bond it received from the directors, are amply sufficient to enable it to perform its agreement, to pay all the debts of the defunct bank, without loss to itself. It is the trustee of an express trust of which plaintiffs are the beneficiaries to the extent of their full deposit. In all equity and good conscience it should not be allowed to gain possession and control of this estate by means of an *ultra vires* contract and then keep the property but repudiate the burdens and responsibilities which rightfully, as well as contractually, belong to its cus-

todianship. There is a vital distinction between the facts of this case and those before us in Paper Co. v. Pub. Co., 172 Mo. App. 495, where a corporation, in good faith and for a reasonable consideration, bought the assets of another corporation and in paying the agreed consideration paid certain scheduled debts of the vendor. Here there was no sale but a conveyance and transfer of the assets of a closed bank to a trustee for certain purposes, the prime one of which was the payment, in full, of all the debts of the grantor. With more than enough proceeds in its hands to discharge this trust, the trustee will not be heard to deny the demand of plaintiffs which belongs to the preferred class.

There is no merit in the point that in checking out the balance of the deposit, as shown by the statement rendered by the Macon County Bank, plaintiffs estopped themselves from claiming more. This was not an account stated and as is well observed in the brief of counsel for plaintiffs, ''In order that the creditor be estopped, the defendant must be prepared to prove a certain amount is tendered in money or by check with the express understanding and statement to the creditor that the sum offered is in full settlement of all demands from the debtor to the creditor, and the debtor is. required to make it clear that the creditor so understood that the tender and payment was to be in full satisfaction and settlement of all demands.''

There was no tender of the sum of $438.44 as in full satisfaction of all demands plaintiffs had or claimed against defendants and nothing to show that the parties understood or intended that such sum, if accepted, would be in full satisfaction.

Returning to the questions relating to the petition, we think they should be decided against the contention of defendants. It may be conceded that there is a marked inconsistency between the remedies sought by plaintiffs, one of which, as stated, being founded

on the idea that the sale of the four notes by the Citizens Bank to plaintiffs was valid, and the other, on the opposite ground, that the sale was void. But in the original petition, as well as in the third amended petition, all of the facts were pleaded and they showed on their face that the pretended sale was void and that plaintiff's real and only cause of action was as depositors or creditors of the bank against whose demand the invalid check could not be interposed as a defense. The relief or remedy prayed for by plaintiff is no part of the statement of his cause of action and with all the facts of a good cause stated, the court will give the proper relief, and will make its own classification of the cause. In such view of the pleadings, there is no repugnancy between the two counts of the amended petition, nor was it a departure from the original petition to allow the addition of the second count by amendment.

Other questions are argued in the briefs but we have properly disposed of the case without discussing them. The cause was tried without prejudicial error and the judgment is affirmed.

*Trimble, J.,* concurs. *Ellison, P. J.,* dissents.