NEWCO LAND COMPANY, a Corporation, and HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Corporation, Appellants, v. WILLIAM W. MARTIN, WILLIAM S. BEDAL and GEORGE F. HARDIE, as Members of and Constituting a Voluntary Organization Styled "Bondholders' Protective Committee for Holders of Bonds of the St. Louis Joint Stock Land Bank," Respondents.—No. 40289.—213 S. W. (2d) 504.

Division Two, June 14, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, September 13, 1948.

100

*Igoe, Carroll, Keefe & Coburn* and *Richmond C. Coburn* for appellants.

*Jacob M. Lashly,* and *Lashly, Lashly, Miller & Clifford* for respondents.

104

[507] BOHLING, C.—Action for money had and received. Newco Land Company, a corporation, hereinafter referred to as Newco, instituted the suit. The petition is in two counts, each based on the same cause of action, which arose out of an embezzlement of $7,000 of Newco's funds by an employee and its deposit in a bank to the credit of defendants to conceal abstractions therefrom. The first count seeks to impress a $7,000 equitable lien upon assets in the hands of William W. Martin, William S. Bedal, and George F. Hardie as the Bondholders' Protective Committee for Holders of Bonds of the St. Louis Joint Stock Land Bank of St. Louis, Missouri, in receivership, hereinafter referred to as the Committee. The second count seeks a judgment for $7,000 against defendants in said representative capacity, with interest. Defendants set up payment to Newco by the indemnity company and that Newco was not the real party in interest. Thereupon, the Hartford Accident and Indemnity Company, a corporation, hereinafter referred to as Hartford, was joined as a party-plaintiff, and each count was amended to seek relief in the alternative; i. e., either to Newco Land Company or Hartford Accident and Indemnity Company. There was a general finding by the trial court in favor of defendants. Plaintiffs appeal from the decree and judgment entered thereon.

The second count of plaintiffs' petition asked judgment in the sum of $7,000, with interest at the rate of six per cent per annum from November 15, 1943, the date of the institution of the action. The judgment was entered on October 7, 1946. The amount in dispute exceeded $7,500 at the time of judgment, vesting jurisdiction here.[1]

The St. Louis Joint Stock Land Bank became insolvent and was in receivership. Bondholders, general creditors, and stockholders [508] were interested. In March, 1932, a committee designated "Bondholders' Protective Committee for Holders of Bonds of St. Louis Joint Stock Land Bank" was created under a deposit or trust agreement and approximately $14,000,000 of the $18,000,000 bonds

[1]Mo. Const. 1945, Art. V, Sec. 3; Sec. 2078, R. S. 1939; Sec. 2078; Mo. St. Ann.; Lackey v. Wilder (Mo. App.), 33 S. W. 2d 1011, 1014[7]; Kimmie v. Terminal R. R. Ass'n of St. Louis, 344 Mo. 412, 415, 416, 126 S. W. 2d 1197, 1198[2].

outstanding were deposited under said agreement. The Committee, among other things, received· "dividends"· from the Land Bank Receiver on bonds deposited under the agreement and would remit the same to the depositing bondholders; and under authority conferred instituted class suits against stockholders of the Land Bank to enforce the "super-added" liability under the federal law of said stockholders and received remittances of recoveries therein. They collected $600,000 or more. The Committee maintained two bank accounts in the First National Bank of St. Louis. Dividends from the Receiver of the Land Bank were deposited in a "Dividend. Account" and thence prorated to the depositing bondholders. The Committee's expense moneys and also collections on suits in foreign jurisdictions were kept in a "Regular Account" and in due time turned over to the registry of the United States District Court for distribution.

In the early 1930s there were a number of business failures and Humphrey-Jacques & Company. engaged in the business of assisting bondholding committees with clerical and other duties. In 1932 William R. Humphrey of Humphrey-Jacques & Company was selected as Secretary of defendant Committee. Efforts at reorganizing the Land Bank failed and by 1939 the work of the Committee had been practically completed, its principal activity being to wait for the Receiver to complete the liquidation. Humphrey-Jacques & Company was ready to quit business in 1940. Mr. Humphrey, about to accept employment taking him out of town, wanted to ·resign as Secretary, but the Committee, having paid him reasonably substantial` sums while the work was active, thought he should continue until the remaining work was finished. Robert H. Torrence was bookkeeper for Humphrey-Jacques & Company and in charge of the accounts of all committees represented by it. Humphrey-Jacques & Company discontinued business as of January 31, 1940. Mr. Torrence was paid $500 to keep the records until Humphrey-Jacques & Company could fully wind up its affairs. Mr. Humphrey agreed to remain as nominal Secretary of the Committee with the understanding· Torrence would do the actual work. Mr. Humphrey received compensation from the Committee until January 1, 1940, the later payments being $25 monthly and all were payable to or turned over to Humphrey-Jacques & Company. Mr. Humphrey testified the Bondholders' Committee was to "settle up" with Torrence for services rendered when the Committee was finally dissolved. On September 6, 1940, the Committee paid Torrence $80.97 for services. The liquidation of Humphrey-·Jacques & Company was completed August 31, 1940, and Torrence ceased to be in its employ. He maintained the books for the Committee until 1942, prepared checks for issuance and made deposits of remittances, including collections in suits against stockholders, in the bank accounts maintained by the Committee.

Unauthorized by and unknown to any of the parties interested,

Torrence had been making withdrawals aggregating $16,882.63 by checks from the "Dividend Account" of the Committee. Checks drawn against the account had to carry the signatures of W. W. Martin and William R. Humphrey, Chairman and Secretary, respectively, of the Committee. Mr. Martin was of opinion his signature had not been forged to the checks. He testified that he usually was away and not available for about a month in the summer and he had signed a few checks in blank, delivering them to Mr. Humphrey, who was supposed to keep them under lock and key, and that possibly some of these checks were used by Torrence.

Mr. Torrence received four remittances of collections in stockholders' suits between January 17 and November 9, 1941, which totaled $7,789.47 and should have been deposited to the credit of the Committee's Regular Account, but he deposited them in the Dividend Account to cover abstractions therefrom. He received a request to pay $36,763.76 to the Clerk of the United States District Court of moneys recovered in stockholders' suits in connection with a [509] distribution to creditors in general of the Land Bank and on May 7, 1942, a check was issued for said amount against the Regular Account of the Committee payable to said United States District Clerk. Said Regular Account had to its credit only $30,350.57. Mr. Torrence was also Assistant Treasurer of Newco and as such had authority to sign checks of Newco when countersigned by the President. He testified he realized if the $36,763.76 check did not clear "everything was finished for me." This caused him to draw a check for $7,000 payable to the Committee against Newco's bank account in the Mississippi Valley Trust Company, forge the countersignature of the President of Newco thereto, and, also forging the Committee's endorsement, deposit the check to the credit of the Regular Account of the Committee. As a result, the Committee's $36,763.76 check to the Clerk of the District Court cleared on May 9, 1942, the $7,000 check was paid and charged against Newco's bank account, and no one, besides Torrence, was any wiser. Newco officials did not discover any abstraction from its funds until late in July, 1942. Newco made a demand upon the Committee for the repayment of the $7,000. This demand was rejected and suit followed.

One whose property has enriched another through the wrongful acts of a third person and without any consideration moving from the recipient may enforce restitution by an action at law for money had and received or a proceeding in equity to impose a trust upon the property in the hands of the recipient.[2]

---

[2]Clifford Banking Co. v. Donovan Comm. Co., 195 Mo. 262, 94 S. W. 527; Third Nat'l Bk. v. St. Charles Savs. Bk., 244 Mo. 554, 149 S. W. 495; Universal Carloading and Dist. Co. v. South Side Bk., 224 Mo. App. 876, 27 S. W. 2d 768; Donovan v. Kansas City, 352 Mo. 430, 448, 175 S. W. 2d 874, 884; 4 Am. Jur. 508, Sec. 20 et seq.; 41 C. J. 26; Restatement, Restitution, Introductory note; Woodward, Quasi-contracts; Keener, Quasi-contracts.

██ The Committee contends no action lies against a person who has received stolen money where he has paid the money over to another without collusion and prior to actual knowledge of the true owner's rights. They say they paid the $7,000 to the United States District Court for creditors of the St. Louis Joint Stock Land Bank prior to any knowledge of Torrence's wrong or Newco's rights and, therefore, they are not liable for Newco's loss, not having retained the fruits of Torrence's fraud or having Newco's money, and not having been "enriched."

Of course, the Committee did not receive money. It received a bill of exchange, a $7,000 check earmarked as being payable to the Committee out of Newco's funds in a bank. Money is currency, is not earmarked and passes from hand to hand. There is no obligation on a transferee to investigate a transferor's title or source of acquisition of money when accepted honestly and in good faith. One may give a bona fide transferee for value a better title to money than he himself has. Easton Food Center v. Beatrice Creamery Co. (Mo. App.), 119 S. W. (2d) 987, 990.

The Committee cites cases like Ford-Davis Mfg. Co. v. Maggee (Mo. App.), 233 S. W. 267, 269, [4]. In that case the treasurer of plaintiff, who had authority to sign checks on its funds and endorse checks payable to its order, secured a cashier's check for $1,027 payable to the order of plaintiff and endorsed it: "Pay to the order of" defendant. Defendant deposited it to his credit and two days later returned the proceeds, without any information respecting plaintiff's rights and without collusion with the treasurer, by check payable to plaintiff's treasurer personally. There was no showing that the $1,027 belonged to plaintiff and not to its treasurer and, of course, plaintiff would not be entitled to recover without establishing its right to the property. The Ford-Davis Mfg. Co. case, as well as other cases wherein the defendant acted as an innocent conduit in the transfer of property and without receiving any benefit therefrom, are ruled correctly, but are not this case. See Burbank v. Farnham, 220 Mass. 514, 108 N. E. 492; Marine Co. v. City of Milwaukee, 15 Wis. 239, 138 N. W. 640, 642[2]. We would have a case more similar to the Committee's cases if the Committee, prior to notice of Newco's rights, had returned the $7,000 to Torrence; [510] or had the Committee received a $7,000 overpayment in one of the suits against stockholders through some mistake and innocently and in good faith in the discharge of its duties turned the $7,000 into the registry of the Court for distribution.

In the instant case the Committee was obligated to pay $7,000 it paid to the United States District Court for distribution, having received it from collections in stockholders' suits. When the Committee used $7,000 of Newco's funds therefor it received a $7,000 credit on its own obligation, was benefited thereby and, consequently, was enriched by

Torrence's dishonest act. The Committee was more than a mere conduit. The action for money had and received is equitable in nature and may be maintained where one has received money or its equivalent, a benefit, belonging to another which in equity and good conscience, ex acquo et bono, he ought not to retain. 41 C. J. 31, Secs. 3-6; 4 Am. Jur. Assumpsit Secs. 20, 22 (appendix) 24.1; 46 Am. Jur. 99; Restatement, Restitution, Secs. 1, 123, 138; Woodward, Quasi Contracts (1913) Secs. 1, 7-9; Union Nat'l Bk. v. Lyons, 220 Mo. 538, 570 et seq., 119 S. W. 540 549; Third Nat'l Bk. v. St. Charles Savs. Bk., 244 Mo. 554, 588, 149 S. W. 495, 504.

▉ Newco contends that if the Committee is to retain the benefits arising from the $7,000 deposit in their bank account, it must assume the guilty knowledge of Torrence at the time of the transaction.

In this litigation the Committee seeks to have the transaction stand as consummated by Torrence and retain the benefits resulting therefrom. As a general rule one who, with knowledge of the material facts, retains the benefits of a transaction consummated by another ratifies the acts of the other in connection therewith and assumes the burdens and liabilities of such acts. This applies when an agent exceeds his authority and particularly in instances where the principal claims the person consummating the transaction was not his agent; that is, was a volunteer or self-constituted agent. The principal by availing himself of the acts and retaining the benefits becomes bound and concluded by the transaction as though the acts had been performed by an agent pursuant to express authority and subject to the acts to his disadvantage. State ex inf. v. Koon, 256 Mo. 284, 201 S. W. 2d 446, 455 [15, 16]; Fritsch v. National City Bk, (Mo. App.), 24 S. W. 2d 1066, 1067 [1, 2]; Mechem on Agency, 2d Ed., Secs. 408, 410, 483; 2 Am. Jur. 177, Secs. 223, 226, 227; 2 C. J. S. 1097, Sec. 49.

The Committee contends the rule does not apply because it parted with the $7,000 on May 9, 1942, when its $36,763.76 check to the Clerk of the United States District Court was cashed and it never had knowledge of the unauthorized acts of Torrence until August, 1942, stating there is no ratification when the principal without fault has parted with the property at the time it becomes known that the agent exceeded his authority. We have pointed out that the Committee retains the benefit of Newco's $7,000. However, the cases stressed by the Committee are distinguishable. Winkelback v. National Exchange Bk., 155 Mo. App. 1, 13, 136 S. W. 712, 716, was an action to rescind a purchase and exchange of real estate between plaintiff and defendant. Plaintiff knew the agent was receiving a portion of the bank's property involved for his services. The court said: "The mere fact that the principal has received or enjoyed the benefits of an unauthorized act will not amount to a ratification if he did so in ignorance of the facts;

nor will his retention of such benefits after knowledge of the facts amount to a ratification if at the time he acquires such knowledge and without his fault conditions are such that he cannot be placed in statu quo or repudiate the entire transaction without loss.'' The same principle from 2 C. J. 496, Sec. 116 (consult 2 C. J. S. 1097, Sec. 49), is stated but did not constitute the basis for the holding in Robie v. Holdahl, 180 Minn. 226, 230 N. W. 641, 643, 644, which is also distinguishable from the instant case on other grounds.

The instant case rests on the underlying equitable principle that the Committee has received property of Newco in circumstances which, in equity and good conscience, ought to be restored to plaintiffs although there exists no promise, expressed [511] or implied from facts, so to do. Newco has received no property of the Committee, is not seeking the rescission of an agreement or the enforcement of some affirmative contractual obligation assumed by defendants. Corpus Juris, supra, states: ''. . . where the principal has suffered no prejudice and can make restitution, he should, when he is apprised of the facts, make his election, and if he decides not to ratify he should return the fruits of the unauthorized act, and if he does not do so within a reasonable time, but retains, uses, or disposes of what he has received, he will be held to have ratified the act of the agent, unless such restoration would be of no practical value to the other party.''

There is this additional in the instant case: The effect of the Committee retaining the benefits of Torrence's act constitutes him their agent in the transaction as though he acted with express authority. It is well settled that the principal is chargeable with notice or knowledge received by his agent while acting within the scope of his authority concerning a matter within the scope of the agency. Restatement, Agency, Sec. 268, 2 Am. Jur. 286, Sec. 368; 3 C. J. S. 194, Sec. 262. There is an exception to this rule when the agent is acting adversely to the principal and entirely for his own or another's purpose. Restatement, Agency, Secs. 279, 282; 2 Am. Jur. 298, Sec. 379. But the stated exception is itself subject to an exception or qualification, which qualification, supported by the greater weight of authority, is to the effect that where the principal asserts or stands on the transaction either affirmatively or defensively, he is deprived of the benefit of the exception where the agent is his sole representative in the transaction, in which case the agents knowledge is imputed to the principal. Restatement, Agency, Sec. 282; 2 Am. Jur. 300, Sec. 380; 3 C. J. S. 202, Secs. 269, 270, and authorities infra. Torrence, as stated in our statement of the facts, was the sole actor in the transfer of the $7,000 from Newco's credit in the Mississippi Valley Trust Company to the credit of the Committee in the First National Bank. In these circumstances his knowledge was imputable to the Committee under the authorities.

Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698, is a leading case and presented issues similar to the instant case. The two corporation had been doing business with one another many years. Plaintiff sued defendant for a balance of $365,500. Defendant contended it was entitled to a set-off of $219,114. One Gray was treasurer for both companies. He had embezzled moneys from both and when accounts were made up he would transfer from one to the other the amount necessary to make his cash good, using checks drawn on one and payable to the other for that purpose. When exposed $219,114 more had been transferred from defendant to plaintiff than from plaintiff to defendant. The court held defendant was entitled to recover the money; that is, entitled to its set-off. The court said in part: "The doctrine is universal, and prevails alike at law and in equity, that a person, though innocent, cannot avail himself of an advantage obtained by the fraud of another, unless there is some consideration moving from himself. It was long ago declared by Lord Mansfield, that, 'although a third person shall not be punished for the fraud of another, he shall not avail himself of it. There is no case in the law where that can be done.'" (L. c. 272.) ". . . in the very transaction of receiving them [the checks], the plaintiff was represented by Gray, and by him alone, and is bound by his knowledge. It is the same as if the plaintiff's directors had received the checks, knowing what he knew. For the purpose of accepting the checks, Gray stood in the place of the plaintiff, and was the plaintiff. . . . It is not as if Gray had stolen the money, and then called the directors of the plaintiff corporation together, and informed them of his indebtedness and of his desire to make a payment . . . and they had received it without knowledge or suspicion that it had been stolen, and given him credit for it as part payment. . . . the plaintiff must be deemed to have had knowledge of the true ownership, because in receiving the funds it acted solely through Gray's agency. It must be deemed to have known what he knew; and it cannot retain the benefit of his act, without accepting the [512] consequences of his knowledge. The plaintiff cannot obtain greater rights from his act than if it did the things itself, knowing what he knew." (L. c. s 273, 274.)

". . . The rule is general, that, if one who assumes to do an act which will be for the benefit of another, commits a fraud in so doing, and the person to whose benefit the fraud will inure seeks, after knowledge of the fraud, to avail himself of that act, and to retain the benefit of it, he must be held to adopt the whole act, fraud and all, and to be chargeable with the knowledge of it, so far at least as relates to his right to retain the benefit so secured." (L. c. 275.)

The principle of law stated in the Atlantic Cotton Mills case has been accepted as good law in Missouri to be applied in appropriate instances. See Third Nat'l Bk. v. St. Charles Savs. Bk., 244 Mo. 554,

584, 149 S. W. 495, 503; Bartlett v. McCallister, 316 Mo. 129, 139 (IV), 289 S. W. 814, 818[5-7] (stating: "We think the rule is supported by the overwhelming weight of authority"); Musgrove v. Macon County Bk., 187 Mo. App. 483, 493, 174 S. W. 171, 175[6]; Citizens Trust Co. v. Coppage (Mo. App.), 227 S. W. 1057, 1059 [2, 3]; Steam Stonecutter Co. v. Myers, 64 Mo. App. 527. See also Curtis, Collins & Holbrook Co. v. United States, 262 U. S. 215, 222, 224, 43 S. Ct. 570, 67 L. Ed. 956; Aldrich v. Chemical Nat'l Bk., 176 U. S. 618, 634 et seq., 20 S. Ct. 498, 44 L. Ed. 611; Ditty v. Dominion Nat'l Bk., 75 F. 769, 771; Munroe v. Harriman, 85 F. 2d 493, 111 A. L. R. 657, 662[1, 2] citing cases; First Nat'l Bk. v. Blake, 60 F. 78; Knobley Mountain Orchard Co. v. Peoples Bk., 99 W. Va. 438, 129 S. E. 474, 48 A. L. R. 459, 461, and Annotation, 464. Annotations, 2 L. R. A. (N. S.) 994 et seq.; 86 A. L. R. 537; 104 A. L. R. 1250 et seq.; 111 A. L. R. 665.

The Committee's contention that the rule is not applicable because it assumes that Torrence was the Committee's representative and, mainly, because it assumes Torrence was engaged in matters over which he had authority to act for the Committee cannot be sustained under the instant facts for the reason the Committee in retaining the benefits of Torrence's acts ratifies them and cures the want of previous authorization, ratification being a substitute for prior authority. Gaines v. Miller, 111 U. S. 395, 398, 4 S. Ct. 426, 28 L. Ed. 466; Menkens v. Watson, 27 Mo. 163, 166; Fritsch v. Nat'l City Bk. (Mo. App.), 24 S. W. 2d 1066, 1068[4]. The Committee's cases, cited in the margin,[3] involved a different factual situation. For instance, it is said in Hunter v. Hunter, see note 3: ". . . But where as here the knowledge was casually obtained by the agent and was not pertinent to the subject matter of any transaction which he was then or thereafter authorized to conduct, or did conduct, for his principal, there can be no reason for holding that such knowledge should be imputed to the principal."

We consider two points together. The Committee says that payment of the forged check was made out of funds of the Mississippi Valley Trust Company, the drawee bank (citing East St. Louis Cotton Oil Co. v. Bank of Steele, 200 Mo. App. 180, 185-187, 205 S. W. 96, 98), and also that the doctrine of election of remedies bars Newco and Hartford from obtaining any relief against the Committee (citing United States Fidelity & Guaranty Co. v. Fidelity Nat'l Bk. & Trs. Co., 232 Mo. App. 412, 415, 416, 109 S. W. 2d 47, 49; Re Franz Estate, 344 Mo. 510, 523, 127 S. W. 2d 401, 406.).

The holding in East St. Louis Cotton Oil Co. v. Bank of Steele is

---

[3]Hunter v. Hunter, 327 Mo. 817, 830(II), 39 S. W. 2d 359, 363(II); State ex rel. v. Allen, 303 Mo. 608, 616, 262 S. W. 43, 44[1]; Stetson Press, Inc. v. Bunsel Oil Burner Corp., 285 Mass. 291, 189 N. E. 103, 104.

that a bank is prima facie liable to a depositor when it cashes a check on which the depositor's signature was forged, but the case explicitly states it does not follow that a depositor may recover from the bank in every instance no matter what the facts may be. As pointed out in the United States Fidelity & Guaranty Company case, infra, Newco had an election of remedies and the East St. Louis Cotton Oil Company case does not rule the issue.

[513] Newco, in November, 1942, éxecuted a "Loan Receipt" to Hartford, acknowledging a loan of $7,500, Hartford having agreed to indemnify Newco against loss through dishonest acts of its employees. The Committee says this constituted an election of remedies inconsistent with the instant action whether said transaction be considered a loan or a satisfaction and payment to Newco, stressing, however, the latter view, which is discussed separately hereinafter. The doctrine of election of remedies exists where inconsistent remedies are available to a litigant and he has the right to adopt one of the remedies with the effect of precluding a later resort to the other. The rule applies only "where an election has been made as between inconsistent remedies." The Franz Estate case, supra, citing the United States Fidelity & Guaranty Company case, supra. See also 28 C. J. S. 1057, Secs. 1, 2; 18 Am. Jur. 132, Secs. 9, 11.

In the United States Fidelity & Guaranty Company case, supra, Chaney, an employee of Continental Construction Company, added names of spurious employees to Continental's payroll. Continental issued checks accordingly. Chaney, forging the endorsement of the named payees, secured the cash at defendant bank. Plaintiff, Chaney's surety, indemnified Continental and, being subrogated to the rights of Continental, sued defendant bank. The court sustained defendant's contention that the surety had no greater rights than Continental, and the Continental at the outset had the choice of pursuing the embezzler and his surety or pursuing defendant; that the two remedies were inconsistent, and that the election to pursue the embezzler and his surety precluded any action against defendant. The court pointed out that the liability of defendant was "on the theory that when defendant paid the checks on forged endorsements of Chaney the bank paid out its own money and not that of the Continental. Since defendant had received Continental's money on deposit and had never been legally authorized to pay it out, it still had Continental's money and must account to Continental therefor. . . . [Citing cases.] Or it could have affirmed the act of the bank in paying out the money on a forged endorsement and, upon the theory that Chaney had its money, it could have pursued Chaney and sought and obtained the return of its money embezzled by him." See 9 C. J. S. 752, n 26.

The situation differs in the instant case. Newco and Hartford have maintained consistently that the Committee has Newco's property.

Newco's action is to recover its property had and received by the Committee. Any adjustment of rights between Newco and Hartford proceeds upon the theory that Torrence and the Committee, Torrence's beneficiary, came into possession of Newco's (not Newco's bank's) property, and is consistent with a recovery from Torrence's beneficiary. There is no claim that the bank paid out the bank's funds. It may be more difficult for a plaintiff to make out a case against an embezzler or a transferee of the embezzler but the right exists under the authorities relied upon by the Committee.

■ The Committee says that Torrence, by reason of his abstraction of $16,882.63 of the Committee's funds, was indebted to the Committee, and that his "act in surreptitiously depositing the Newco check in respondents' bank account constitutes partial 'payment' of Torrence's obligation" to the Committee. We think the contention may not be sustained for at least two reasons.

The signature of Newco's president and the endorsement of the payee named in the $7,000 check were forgeries and under the law of this State the instrument was inoperative. Section 3039, R. S. 1939 (Mo. St. Ann. Sec. 3039) of our Negotiable Instrument Act reads: "Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature . . ." Neither Torrence nor the Committee acquired any title to the instrument or any rights against Newco under the forged signature of Newco's president on the check and neither was entitled to payment out of Newco's funds or to retain the [514] funds received. Borserine v. Maryland Cas. Co., 8 Cir., 112 F. 2d 409, 415[9], citing cases; First Nat'l Bk. v. Produce Exchange Bk., 338 Mo. 91, 98, 89 S. W. 2d 33, 37[3], also citing cases; German-Am. Bk. v. Barnes (Mo. App.), 185. S. W. 1194, 1195[1, 2]; Seaboard Nat'l Bk. v. Bank of America, 193 N. Y. 26, 85 N. E. 829, 830; Real Estate-Land Title & Trs. Co. v. United Security Trs. Co., 303 Pa. 273, 154 Atl. 593, 594[4].

■ The Committee relies on Sec. 3225, R. S. 1939 (Mo. St. Ann., Sec. 3225), which, so far as material, reads: "If any check . . . of any corporation . . . shall be given in payment of the debt of any officer, agent or employee of said corporation .. . . . the payee . . . collecting such check . . . shall not be liable to said corporation . . . therefor, unless it shall be shown that such payee . . . at the time of collecting same, had actual knowledge that said check . . . was issued without authority of said corporation . . ." Prior to the enactment of Sec. 3225 one accepting a corporation's check in payment of personal obligations of its employees took the risk of being required to restore the proceeds. Goodbar v. Scruggs, Vandervoort & B. D. G. Co., 210 Mo. App. 112, 115, 242 S. W. 129, 130.

We think, as stated in Fidelity & Casualty Co. v. Planenscheck, 200 Wis. 304, 227 N. W. 387, 71 A. L. R. 331, 336: "... the Negotiable Instrument Act deals with the rights and liabilities of those who are legitimate parties to the instrument. It does not prohibit a bank from recovering from forgers, thieves, or from those who have no title to the instrument." See United States F. & G. Co. v. Fidelity Nat'l Bk. & Tr. Co., supra, and remarks in McClendon v. Bank of Advance, 188 Mo. App. 417, 427, 174 S. W. 203, 205. In addition, we have ruled the Committee is bound by Torrence's knowledge of the forgeries and his want of rights against Newco under the $7,000 check. It is the same as if the Committee had received the check knowing what Torrence knew.

On November 4, 1942, Newco executed a "Loan Receipt" to Hartford wherein it acknowledged receipt of $7,500 as a loan from Hartford, repayable only to the extent of any net recovery by Newco on account of loss occasioned by the dishonest acts of Torrence, and agreed to prosecute suit for such loss, the suit to be at the expense and under the control of Hartford, and pledged any recovery as security for repayment.

Torrence perpetrated a fraud upon Newco. By means of forgery he effected the transfer of Newco's funds to the Committee. The Committee, charged under the facts of this case with knowledge of these acts of Torrence, says the loan agreement is not what it purports to be but is a payment and Newco has received satisfaction. Such agreements effect a prompt turning over of money to the insured, and if a payment were effected the insurer would be subrogated to the rights of the insured. Newco was under no obligation to Torrence or the Committee to insure against embezzlements or forgeries by Torrence. If the insured and insurer thought their interests would be best served by making a loan subject to repayment to the extent of any recovery of funds wrongfully taken, they had a right to make such an agreement. No law or public policy is cited precluding such a contract in aid of the recovery of a loss occasioned by forgery. Whether a transfer of money operates as a payment or a loan is ordinarily a matter of intention of the parties to the transaction. The "Loan Receipt" states the money was "received . . . as a loan" and that it is "repayable" upon certain conditions. There is no transfer of Newco's claim to its property, but an expressed agreement that it will make claim thereto and prosecute suit for the recovery thereof. Like agreements have received the approval of the courts of the United States and of the States as meeting the needs of commerce and promoting justice. We think such decisions should be followed here. Luckenbach v. McCahan Sugar Ref. Co., 248 U. S. 139, 63 L. Ed. 170, 39 S. Ct. 53, 1 A. L. R. 1522, and Annotation 1528; First Nat'l Bk. v. Lloyds of London, 7 Cir., 116 F. 2d 221, 132 A. L. R. 599, and Annotation 607; Kossmehl v. Millers Nat'l Ins. Co., 238 Mo. App.

671, 679, 185 S. W. 2d 293, 295[5]; National Shawmut Bk. v. Johnson, 317 Mass. 485, 58 N. E. 2d 849, 851[1]; Phillips v. Clifton Mfg. Co., 204 S. C. 496, 30 S. E. 2d 146, 157 A. L. R. 1255, [515] and Annotation 1261. Merrimack Mfg. Co. v. Lowell Trucking Corp., 181 Misc. 947, 46 N. Y. S. 2d 736; Morton Coal Co. v. Garcia, 57 N. Y. S. 2d 67; 8 Couch on Insurance, Sec. 2004.

■ The measure of recovery in the circumstances of the instant case is the amount of money received by the Committee, with interest.[4] In appropriate instances a constructive trust or an equitable lien may be enforced.[5] Prior to the time of the disclosure of Torrence's embezzlements of Newco's $7,000 the deposits to the credit of the Committee had dropped to a balance of $133.41 in its Regular Account and to a balance, we understand, in its Dividend Account of $193.02. However, as of the date of trial the Committee's Dividend Account had a credit balance of $30,153.57. In these circumstances we think plaintiffs' count for money had and received will afford adequate relief, and we need not discuss any issue involving a constructive trust or equitable lien.[6]

Other matters are mentioned but they are not of substance.

Accordingly, the judgment and decree is reversed and remanded with directions to find in favor of defendants in their representative capacity and against both plaintiffs on the first count of the petition and in favor of defendants and against Hartford Accident and Indemnity Company on the second count of the petition but in favor of Newco Land Company and against defendants in their representative capacity in the sum of $7,000, with interest thereon from November 15, 1943, the date of bringing suit, at the rate of six per cent per annum on said second count. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Leedy, J.,* and *Ellison, J.,* concur; *Tipton, P. J.,* not sitting.

ON MOTION FOR REHEARING OR TO TRANSFER TO COURT EN BANC.

PER CURIAM:—The Committee has filed a motion for rehearing or, in the alternative, for transfer to Court en Banc, urging, among

---

[4] Restitution, Restatement, Secs. 150, 156, 41 C. J. 71, Secs. 80, 81; Rector v. Hamtramck, 1 Mo. *565; Benton v. Craig, 2 Mo. *127; Reed v. Foote, 36 Mo. App. 470.

[5] Restitution, Restatement, Secs. 202 et seq.; Tierman v. Security Bldg. & L. Ass'n, 152 Mo. 135, 53 S. W. 1072; Orr v. St. Louis Union Trs. Co., 291 Mo. 383, 236 S. W. 642.

[6] Consult Restitution, Restatement, sec. 212; 3 Scott on Trusts 2483, sec. 518 et seq.; Horigan Realty Co. v. First Nat'l. Bk., 221 Mo. App. 329, 336, 273 S. W. 772, 776[9]; Mercantile Trs. Co. v. St. Louis & S. F. Ry. Co., 99 F. 485; Schuyler v. Littlefield, 232 U. S. 707, 58 L. Ed. 806, 34 S. Ct. 466.

other things, that Sec. 3225 is controlling. Each of the two issues discussed below is essential to the Committee's case.

Section 3225 authorizes creditors to accept the check of a corporation, firm, or copartnership in payment of the debt of an officer, agent, or employee of the corporation, firm, or copartnership "unless . . . such payee or other person, at the time of collecting same, had actual knowledge that said check, draft or order was issued without authority of said corporation, firm or copartnership." The Committee says we overlooked that it did not have "actual knowledge" that Newco's check "was issued without authority," including Torrence's forgery of the signature of Newco's president thereon. Torrence acted for both parties. He had knowledge of all the facts, and no one but him had any knowledge of the facts. He collected the check, bringing the transaction within the exception stated in Sec. 3225. Direct personal knowledge is not required. It is a general rule of law that one may not lawfully use the funds of another to pay his individual debts; and prior to the enactment of now Sec. 3225 in 1917 (Laws 1917, p. 143) corporation checks when accepted in payment of the individual indebtedness of a corporate employee and [516] not in payment of the corporation's indebtedness were held to carry upon their face notice of their irregular and illegal character in the misappropriation of the corporate funds (an inference of fact) and the corporation could recover unless the party receiving payment established the employee's authority to issue the check in payment of his individual indebtedness. St. Louis Charcoal Co. v. Lewis, 154 Mo. App. 548, 551, 136 S. W. 716, 717; Reynolds v. Title Guaranty Trs. Co., 196 Mo App. 21, 33(I), 189 S. W. 33, 36[1]; O'Bannon v. Moerschel, 204 Mo. App. 155, 157, 222 S. W. 1035, 1036[1]. The legislative intent was to change the rule that the face of the check imparted notice or knowledge of its illegality. The word "actual" was used to do away with the prior inference of misappropriation arising from the face of the check. Its purpose was not to change the principles of law which impute notice to or knowledge of an agent to his principal. Torrence had actual knowledge of the illegality of the check, and it is this actual knowledge that is charged in law to the Committee. Consult Livermore v. Blood, 40 Mo. 48. Colby v. Riggs Nat'l Bk., 92 F. 2d 183, stressed by the Committee, is readily distinguished on the facts. No agent of said defendant had actual knowledge of the essential facts and as we read the case it implies that knowledge of an agent is to be imputed to the principal.

It is also claimed that Sec. 3225, being later, controls over Sec. 3039. Section 3039 makes a signature "forged or made without the authority" of the party wholly inoperative, but is specifically not applicable if said party be precluded from setting up the forgery or want of authority. We think Sec. 3225 applies to instances wherein

the individual drawing the check is authorized so to do but exceeds his authority by misappropriating it to pay his personal debts, and that it does not embrace the forgery of another's signature when such signature is essential to the validity of the instrument. It is not within the language of Sec. 3225 that parties seeking to protect themselves against peculations by requiring more than one signature to a check are to be penalized when one authorized to join in the execution of the check forges other signatures to give the check seeming validity. Section 3039 relates to the making of a negotiable instrument while Sec. 3225 relates to the misapplication made of an instrument legally executed. Section 3225 was not enacted to sanction forgeries.

The other points mentioned by the Committee are sufficiently covered in the opinion.

The motion for rehearing or to transfer is overruled.